ELORA C. FINK, Judge Pro Tem.
On July 23, 1990, Juan Perez was convicted by a jury of simple burglary of an inhabited dwelling, a violation of LSA-R.S. 14:62.2. On appeal he contends the State failed to produce sufficient evidence to identify him as one of the perpetrators of the crime. We affirm, for the reasons that follow.
FACTS
Around 12:30 or 12:45 p.m. on January 5, 1990, Curtis Petit, Jr., was driving home when he saw three men outside the residence of his friends Chandra and Butch Burge in Luling. One of the men was pulling on a window, another was backing a car into the carport, and the third was watching the car back up. Mr. Petit circled the block; as he went past a second time, *338 he noticed the window was open and the three men were no longer outside.
Mr. Petit drove to a nearby convenience store and telephoned the Sheriffs Office, then returned to the scene to wait for a deputy to arrive. As Petit drove back to the Burge residence he saw the three men driving away. Simultaneously, Deputy Harold Yicknair, Jr., of the St. Charles Parish Sheriff’s Office drove up. Petit flagged him down and informed him that the car ahead of him contained the three men who had just exited the Burges’ home. They were heading off toward the town of Ama.
Chandra Burge testified she received a telephone call on January 5, 1990 from a policeman who told her her house had been broken into and burglarized. She immediately went home, where she noticed several things missing, including a camera, a VCR, a stereo, some coats, and a “lot of change” that had been in a bedroom closet. She identified photographs that depicted a pillowcase taken off one of the beds, the change that was in the closet, a camera lense that was taken from the house, her stereo equipment, camera, coats and hats. She stated these pictures were taken when she went to the evidence room to pick up her things. She also stated she did not know the defendant and had not given him permission to take things out of her house.
Deputy Harold Vicknair, Jr., of the St. Charles Parish Sheriff’s Office testified he was dispatched to the Burge home in response to a report there was a burglary in progress. On his arrival he was flagged down by Mr. Petit, who informed him that the three men he had seen at the Burges’ had gotten in their car and that it was the car directly in front of Vicknair’s unit. Vicknair caught up with the car and called headquarters to give a description of the car and its occupants. He then followed the car into Ama, where he attempted a traffic stop, but the vehicle sped up and a high-speed chase ensued. He followed the car as it turned down Palmer Drive in Ama, a dead-end street, and onto an airstrip at the end of the street, where it crashed into a tree at the edge of a wooded area.
Vicknair, who said he had stopped approximately 20 to 25 feet behind and slightly to the left of the getaway car, watched the three occupants of the car flee into the woods. He said the driver ran in an easterly direction and the right-front and right-rear passengers ran in a westerly direction. During the chase, Vicknair had dispatched descriptions of the getaway car’s occupants to headquarters, in which he described the driver as a dark-skinned Negro male wearing dark clothing and the right-rear passenger as a white male wearing a light shirt, with shoulder-length curly brown hair and a brown mustache and beard. He said neither of these men was the defendant. He was unable to see the right-front passenger during the chase because he was “shrunk down in his seat”, but during the radio dispatch he described this passenger as “possibly a Negro male wearing dark clothing.”
Vicknair testified that when the three men abandoned the getaway car, he focused his attention on the right front passenger and “got a glimpse of him as he was running away.” He stated that the suspect was wearing blue jeans, but did not remember the color of his shirt, but admitted he did not get a good look at his face.
With the assistance of another officer and a K-9, Deputy Vicknair pursued the two men who had fled west. The dog followed a scent into a wooded swampy area near two sets of railroad tracks. While Vicknair was searching for the men in the woods, Detective Olga Fourroux informed him by radio that she had one of the suspects in custody. The suspect she had collared was the defendant and the site at which she found him was approximately a 20-minute walk from the place Vicknair was when he received the call. Vicknair said it was about 3:30 or 4:00 by that time. Vicknair testified he told Fourroux the suspect “did resemble the person I saw from the — it would be front, right passenger. The clothing description matched, and you know, I really didn’t get a good look at the guy’s face, but it did look — appeared to be him.” Later in his testimony, Vicknair said, “The defendant matched the clothing *339 description, and I just got a glimpse of his face, but everything else matched.” Deputy Vicknair testified further that the defendant, like Vicknair, was muddy from his knees down.
Detective Olga Fourroux, the arresting officer, testified that at 1:30 or 2:00 p.m. on the day of the burglary she and another detective were assigned to watch Ninth Street in Ama to support and back up the search. Two sets of railroad tracks intersect Ninth Street, which ends at the second set of tracks. Fourroux estimated the tracks are a quarter of a mile from one another, specifically disagreeing with the estimate made by Deputy Vicknair, who approximated the distance as two miles.
Fourroux stated they had been parked for about an hour near the first set of tracks from River Road, when they noticed two people running on the second set of tracks, heading west; the detectives drove to the end of the street and proceeded on foot to follow the two men, who were out of sight by then. A passing train briefly prevented the detectives from crossing the tracks during their pursuit, but after it passed they started walking toward two empty box cars located about a block to a block-and-a-half away from Ninth Street.
At this point, Detective Fourroux noticed the defendant hiding in a thicket to her left, croached down with his back to the tracks. She ordered him to stand up, turn around, and walk toward her. Then, with the assistance of the other detective, she handcuffed the defendant and the detectives brought him to the squad car on Ninth Street. Fourroux stated that the defendant was wearing blue jeans, that he was muddy and wet from the feet on up, and had grass and twigs on his clothing.
Darwyn Grabert, a crime scene technician, testified no latent fingerprints were found on the abandoned getaway car or on the stolen property recovered from it, which included stereo equipment, personal items, and a large bag of money. None of the fingerprints collected at the Burge residence matched the defendant’s fingerprints.
The defendant presented alibi testimony to account for his whereabouts on the day of the burglary. He testified that on January 5, 1990, he had spent the preceding night at the home of his friend Sheila Johnson in Destrehan and was there until 12:30 p.m. He said after he left he “hitched a ride” with two men to Boutte to buy marijuana; he testified he had $250 on him and that he paid the men $5 for the ride. They took him to Ama, telling him he could find marijuana there. The defendant claimed they drove him to “a long street with houses on either side,” beat him, took his money, and told him to walk down the street without looking back. The defendant said he walked down the street, which ended at the railroad tracks, and then walked along the tracks. He said the total distance he walked, from where the men let him off to where he was arrested, was about five blocks. He stated he was stopping for air when he was arrested.
The defendant also admitted he had previously been convicted of automobile theft and had spent time in jail. He also denied seeing the two men that the deputies had seen running on the railroad tracks.
To corroborate his story the defendant offered the testimony of Sheila Johnson, who testified that on the day in question the defendant had spent the preceding night at her home in Destrehan and left walking, about 11:30 a.m. or 12:00 noon. He left her home walking, but did not tell her where he was going when he left.
Detective Fourroux, recalled to the stand, testified she and the other detective had been stationed on Ninth Street by the first set of tracks from 1:30 or 2:00 that day, that the defendant was apprehended between 3:00 and 3:15, that they had driven to the second set of tracks and back to the first a couple of times, but they saw nobody looking like the defendant coming or going down the street before he was apprehended. They had seen no vehicles pass by with anybody that might have looked like him nor had they seen anybody scuffling or fighting.
The defendant was arrested and charged with simple burglary; the charge was later *340 amended to simple burglary of an inhabited dwelling. After a trial by jury, the defendant was found guilty as charged, on an 11-to-one verdict. He filed a motion for post-verdict judgment of acquittal, which was denied. Due to a prior felony conviction for automobile theft, he was sentenced as an habitual offender to ten years at hard labor without benefit of probation or suspension of sentence, pursuant to LSA-R.S. 15:529.1.
The defendant now appeals, contending that the trial judge erred in denying his motion for post-verdict judgment of acquittal. In essence, he argues there is insufficient evidence to establish that he was one of the three men who burglarized the Burges’ home.
LAW
In examining the sufficiency of the evidence to support a criminal conviction, the reviewing court must determine whether, by viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where circumstantial evidence is used to establish the commission of an offense, LSA-R.S. 15:438 requires that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Ultimately, all evidence, both direct and circumstantial, must be sufficient to show that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985).
Where the key issue is not whether the crime was committed, but whether the defendant was the person who committed it, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Smith, 430 So.2d 31 (La.1983).
Where the resolution of conflicting testimony about factual matters is dependent on a determination of witness credibility, it goes to the weight of the evidence, not its sufficiency. State v. White, 472 So.2d 130 (La.App. 5 Cir.1985).
ANALYSIS
Applying the law to the facts in the record, we conclude the trial court did not err in denying the defendant’s motion for post-verdict judgment of acquittal.
Deputy Vicknair, who pursued the suspects through the woods, described the terrain as wet, swampy and muddy, with knee-deep water in places. He got wet and muddy from his feet up to above his knees. The defendant was wet and muddy also, as if he had gone through marshy terrain, and had grass and twigs on his clothing; in addition he was found in the area the two suspects had been heading toward and the detectives surveilling the street had seen no one of the defendant’s description until after they saw two people running west on the railroad tracks. If the defendant’s version of events were correct he would have been somewhere on or around the street visible to Deputy Fourroux, at some time before he was found in the thicket. Further, his story does not account for his wet and muddy condition.
Accordingly, we conclude the State negated any reasonable probability of mis-identification and thus carried its burden of proof.
DECREE
For the foregoing reasons, the defendant’s conviction is affirmed.
AFFIRMED.
BOWES, J., dissents with written reasons.