| iROBERT J. BURNS, Judge Pro Tem.
The defendant, Steven Brumley, appeals from his two convictions of simple burglary and his conviction of attempted simple burglary, claiming the following: (1) that the evidence was insufficient with respect to one of the simple burglary convictions, (2) that he received ineffective assistance of counsel, and (3) that he received excessive sentences on all three convictions. We affirm the convictions and sentences. We decline to consider the ineffective assistance of counsel claims, reserving to the defendant the right to bring these claims in a post-conviction petition.

PROCEDURAL HISTORY

The defendant, Steven Brumley, was charged as follows:
l2Charge Disposition
Count I — R.S. 14:62, Simple Burglary of Cobbler Shop Guilty of Simple Burglary
Count II — R.S. 14:62, Simple Burglary of Vehicle Belonging to Christopher Joseph Not Guilty
Count III — R.S. 14:62, Simple Burglary of Lee Trailer Home Guilty of Simple Burglary
Count IV — R.S. 14:27:62, Attempted Simple Burglary of Stone Home Guilty of Attempted Simple Burglary
A jury of six unanimously found the defendant guilty as to counts one, three and four, and not guilty as to count two. The defendant filed a motion for new trial, which the trial court denied. The defendant waived all delays and was thereafter sentenced to ten years at hard labor for each of the simple burglary convictions and to six years at hard labor for the attempted simple burglary conviction. The trial judge specified that the sentences were to run concurrently. The defendant filed a motion to reconsider his sentences, which was denied by the trial court. The defendant has appealed to this Court.
FACTS — COUNT I — BURGLARY OF THE COBBLER SHOP[1]
At the jury trial held on August 14, 1996, Mr. Varice Markey testified for the state. *878 On direct examination, Mr. Markey testified that he had known the defendant for about four years prior to October 10, 1995. Mr. Markey identified the defendant in court as the person he saw standing in the Cobbler Shop on the | anight of the burglary. At approximately 1:00 a.m., Mr. Markey left his house on his bicycle to go to the store for some ice cream. He heard a crash coming from the Cobbler Shop, immediately looked towards the shop, noticed that the glass front door had been broken, and saw the defendant and another male standing inside the Cobbler Shop. Mr. Markey continued riding his bicycle until he reached the store, where he called the police to notify them of the crime in progress. As Mr. Markey bicycled back to his house, he saw the defendant and another male running towards some railroad tracks.
Mr. Markey claimed that he was at his house before he ever saw or spoke to an officer. Mr. Markey also claimed that Deputy Smith came to his house, asked whether Mr. Markey could identify the perpetrators and took Mr. Markey down the street to identify the perpetrators. Mr. Markey testified that the police had caught the other male whom he had seen standing inside the Cobbler Shop, but that they did not catch the defendant.
Contrary to his testimony on direct examination, Mr. Markey testified on cross examination that he called the police after he got home from buying ice cream at the store. Mr. Markey also testified that as he passed the Cobbler Shop, he saw the other male perpetrator holding a brick in his hand. Mr. Markey did not know this other male and was not able to identify him by a name or otherwise. Mr. Markey testified that he was approximately fifteen (15) yards away from the Cobbler Shop when he saw the defendant standing inside the shop. He testified that although there were no lights on inside the Cobbler Shop, he was still able to see the defendant and his accomplice because lights were lit around the ^exterior of the shop. He claimed that the lighting outside the Cobbler Shop was not poor.
Mr. Markey admitted that he had been convicted of so many crimes, he could not specifically remember them. After prompting by the defendant’s attorney, Mr. Markey admitted the following convictions: (1) May 26, 1993, resisting an officer, (2) May 26, 1993, urinating in public, (3) June 13, 1994, disturbing the peace, (4) December 22, 1993, theft of less- than $100.00, (5) February 8, 1995, criminal damage to property belonging to another, specifically a broken window, (6) March 8, 1995, simple battery, and (7) July 26, 1995, unauthorized use of a movable of less than $1,000.00. Mr. Markey admitted that he was still on probation. Mr. Markey admitted that he used to have an alcohol problem, but claimed that he was sober on October 10, 1995. He denied having broken the window of the Cobbler Shop. He also did not know whether the defendant and/or the other male had taken anything from the shop.
Mr. Medina, the owner of the Cobbler Shop, testified that the defendant had not had his permission to be in the Cobbler Shop.

SUFFICIENCY OF THE EVIDENCE-COBBLER SHOP BURGLARY

The defendant was convicted of simple burglary, in violation of LSA-R.S. 14:62, which provides in pertinent part:
Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein....
The defendant specifically claims that the state failed to prove beyond a reasonable doubt that the defendant was the Igindividual responsible for the burglary of the Cobbler Shop. The defendant argues that the jury, as trier of fact, could not have believed the testimony of Varice Markey.
In one of its most recent decisions, the Louisiana Supreme Court explained the legal analysis applicable to a claim of insufficient evidence as follows:
An appellate court reviewing a claim of insufficient evidence must determine that the trial evidence, whether direct or cir- *879 eumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient -to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); ... if the appellate court finds that no rational trier of fact, viewing all the evidence from a pro-prosecution standpoint, could have found guilt begond a reasonable doubt, the conviction cannot constitutionally stand. Id. (Emphasis added).
State v. Hawkins, 96-0766, p. 7 (La.1997), 688 So.2d 473, 479. See also State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222. In Hawkins, two state witnesses claimed that they saw the defendant kill the victim and then throw the victim’s wallet into some nearby bushes. As in the instant case, the defendant claimed that the testimony of these witnesses was so flawed and unreliable that a rational jury could not have returned a guilty verdict. The supreme court held that, the evidence was sufficient, explaining as follows:
In the instant case, the jury made credibility determinations and accepted the testimony of the witnesses as true. This Court cannot say that the jury’s determination was irrational. Thus, there was sufficient evidence for the jury to find, beyond a reasonable doubt, that the defendant was guilty of first degree murder. (Emphasis added).
Id., 96-0766 at p. 7, 688 So.2d at 480.
In State v. Augustus, 93-406 (La.App. 5 Cir. 2/23/94), 633 So.2d 783, writ denied, 94-0964 (La.9/2/94), 642 So.2d 1284, the defendant was convicted of simple burglary of a vehicle. The defendant allegedly broke into a van that did not belong to him and sat behind the driver’s seat. This Court held as follows:
... it is not the function, of the appellate court to evaluate credibility and overturn the trial court on its factual determination of guilt. (Emphasis added).
Id. at 785.
In State v. Perez, 582 So.2d 337, 340 (La. App. 5 Cir.1991), writ denied, 608 So.2d 186 (La.1992), this Court explained the issue of identification as follows:
Where the key issue is not whether the crime was committed, but whether the defendant was the person who committed it, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Smith, 430 So.2d 31 (La.1983). (Emphasis added).
Where the resolution of conflicting testimony about factual matters is dependant on a determination of witness credibility, it goes to the weight of the evidence, not the sufficiency of it. State v. White, 472 So.2d 130 (La.App. 5 Cir.1985). (Emphasis added).
Mr. Markey testified that he did not commit the crime and that he in fact saw the defendant commit the crime. Apparently, the jury chose to believe Mr. Markey. See also State v. Monterroso, 96-376 (La.App. 5 Cir. 11/14/96), 685 So.2d 249 (jury chose to believe inconsistent testimony of state witness rather than testimony of defendant and such factual determinations will not be disturbed unless clearly contrary to evidence).
Viewing the evidence in the light most favorable to the prosecution, we cannot say that the jury erred in finding that the state proved beyond a reasonable doubt that the defendant committed the burglary of the Cobbler Shop.
| ^EXCESSIVE SENTENCE
In State v. Styles, supra, this Court set forth the law with regards to claims of constitutionally excessive sentences as follows:
The Louisiana Constitution in Article 1, Section 20 prohibits the imposition of excessive punishment. Even a sentence within the prescribed statutory limit may violate a defendant’s right against excessive punishment. State v. Sweeney, 443 So.2d 522 (La.1983).
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless in *880 fliction of pain and suffering. A sentencing is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Bradham, 94-71 (La.App. 5 Cir. 5/31/94), 638 So.2d 428. The trial judge has wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside as excessive absent manifest abuse of that broad discretion. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Riche, 608 So.2d 639 (La.App. 5 Cir.1992), writ denied, 613 So.2d 972 (La.1993). Maximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender. State v. Quebedeaux, 424 So.2d 1009 (La.1982), appeal after remand, 446 So.2d 1210 (La.1984); State v. Riche, supra.
The defendant was convicted of two counts of simple burglary and one count of attempted burglary. LSA-R.S. 14:62 provides the penalty for simple burglary as follows:
Whoever commits the crime of simple burglary shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than twelve years, or both.
LSA-R.S. 14:27(D)(3)' explains how to determine the penalty for attempted burglary as follows:
In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of 18imprisonment prescribed for the offense so attempted, or both.
The trial judge sentenced the defendant to ten years at hard labor for each of the simple burglary convictions and to six years at hard labor for the attempted simple burglary conviction.
The trial judge considered the sentencing guidelines and the circumstances of this case, finding that the factors listed in LSA-C.Cr.P. art. 894. 1(A)(1)-(3) all applied in the defendant’s case. The trial judge also considered LSA-C.Cr.P. art. 894.1(B)(9), (11), (14) and (28) prior to sentencing the defendant. Therefore, the sentences imposed are not constitutionally excessive.

ERROR PATENT REVIEW

An error patent review was also conducted in accordance with State v. Oliveaux, 312 So.2d 337 (La.1975). Although the minute entry and commitment form reflect that the defendant was given credit for time served, the transcript does not so reflect.
Prior to its amendment in 1997, LSA-C.Cr.P. art. 880 provided as follows:
The court, when it imposes sentence shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence.
Act 788 of the 1997 Regular Session of the Louisiana Legislature amended LSA-C.Cr.P. art. 880 to read as follows:
A defendant shall receive credit toward service of his sentence for time spent in actual,1 custody prior to the imposition of sentence.
The official revision comment provides as follows:
This article makes the credit for prior custody self-operating even on a silent record. It does not change the law.
In State v. Loyd, 96-1805, p. 4, 9 (La.1997), 689 So.2d 1321, 1324, 1326, the Louisiana Supreme Court discussed ex post facto laws, explaining as follows:
Article I, § 10 of the Constitution forbids the States from passing any “ex post facto Law.” California Department of Corrections, et al v. Morales, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). The Ex Post Facto Clause is aimed at laws that “retroactively alter the definition of crimes or increase the punishment for criminal acts.”
[[Image here]]
... this court, with respect to the Louisiana Ex Post Facto Clause, stated in State ex rel. Glover [v. State], 93-2330 (La.9/5/95), 660 So.2d 1189, 1200, that an ex post facto law is one passed “after the commission of an offense which in relation to that offense or its punishment alters the situation of a party to his disadvan *881 tage.” ... Therefore, to qualify under Glover as an ex post facto law, the suspect legislation: (1) must be passed after the date of the offense, (2) must relate to the offense or its punishment, and (3) must alter the situation of the accused to his disadvantage. (Emphasis added).
The revision to LSA-C.Cr.P. art 880 does not alter the situation of the defendant to his disadvantage, thus the 1997 amendment does not violate the Ex Post Facto Clause. Defendant received credit for time served pursuant to LSA-C.Cr.P. art. 880.

AFFIRMED.

. The facts surrounding the defendant’s acquittal for count II and his convictions for counts III *878 and IV are not at issue, therefore, this opinion will not address them.