688 So.2d 473 (1997)
STATE of Louisiana
v.
Jonathan HAWKINS.
No. 96-K-0766.
Supreme Court of Louisiana.
January 14, 1997.
Rehearing Denied February 21, 1997.
*474 Michael F. Barry, New Orleans, for Applicant.
Richard Phillip Ieyoub, Attorney General, Harry F. Connik, District Attorney, Valentin Michael Solino, for Respondent.
*475 KITCHENS, Justice[*]
On March 2, 1989, the defendant, Jonathan Hawkins, was indicted for the first degree murder of Samuel Klingensmith while in the perpetration or attempted perpetration of an armed robbery in violation of LSA-Rev. State. 14:30(A)(1). At his arraignment on March 6, 1989, the defendant entered a plea of not guilty. On February 8, 1990, after a three day jury trial, the defendant was found guilty as charged. At the sentencing phase of the trial, the jury recommended that the defendant serve a sentence of life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. After waiving all legal delays, the defendant was sentenced, and after his conviction and sentence were affirmed by the Louisiana Fourth Circuit Court of Appeal affirmed (State v. Hawkins, # 90-KA-1235 (La.App. 4 Cir. 9/15/95), 667 So.2d 1070.), we granted defendant's application for writs. We now affirm Hawkins' conviction and sentence.

FACTS
Our review of the record indicates that the court of appeal's recitation of the facts is accurate. Thus, we adopt it for this opinion:
Around 10:00 P.M. on October 13, 1986, Tulane University Professor Samuel Klingensmith was shot and killed near the corner of Freret and Adams Streets. Several residents in the area heard a gunshot and came out to investigate.
Henry Hayes came out, saw the victim lying on the sidewalk, placed the victim's briefcase under his head for comfort, and was with him when he died. Hayes did not see anyone fleeing the scene.
Louis Otto, who lives on Burdette Street, went outside with his son Kevin and saw an unknown black male run around the corner from Freret Street onto Burdette, run one hundred feet on Burdette then slow to a walk the remaining two-thirds of the block to Zimple Street. Otto and his son saw the black male throw something into the bushes as he approached Zimple Street and then turn onto Zimple. Otto saw the suspect unmasked but could only describe him in general terms. When the man was out of sight, Otto and his son went over to the bushes and looked on the ground for the object but found nothing in the dark. The next morning, after reading about the murder in the newspaper, Otto went around the corner to the crime scene and told the detective what he had seen the night before. Otto showed the officer the bushes where the man had thrown something. The officer found the victim's wallet inside the bushes and crime lab technician, Gregory Migaud, was summoned to collect it.
New Orleans Police Officers Gary Scioneaux and Glenn Banks were the first police on the scene. When they arrived, the victim was lying on the sidewalk with a briefcase under his head. The officers secured the scene for the homicide detectives and the crime lab technicians. Homicide Detective Norman McCord arrived and took charge of the investigation. Crime Lab Technician John Treadway took photographs and collected physical evidence. McCord was able to locate only one eyewitness, Troy Jupiter.
Hugh Straub and Rev. David Cameron, who, [sic] with their wives, were driving together on Hillary Street in a lake-ward direction at approximately 10:00 p.m. the night of the murder. As the two couples approached the Freret intersection, they saw a man walking from their right on Freret Street. The man had a white handkerchief draped mask-like over his nose, which he pulled down as the car entered the intersection, and kept his left hand under his shirt. After passing him, Straub observed that the man had a gun in his hand. The two couples then went directly to Straub's house and called 911 to report what they had seen. After learning of the shooting the next day, Straub and Cameron contacted the police. Detective McCord interviewed the two men and arranged *476 a session with police artist Johnny Donnels, resulting in a composite sketch of the suspect.
On October 28, 1986, Tulane University announced a $10,000 reward for information leading to conviction in the case. The same day, the police received an anonymous telephone tip naming Roy Mason as the perpetrator. Detective McCord located a mugshot of Roy Mason and included the photograph in a lineup shown to Troy Jupiter. Jupiter was not able to identify anyone in the photographic lineup as a possible suspect. In early November 1986, Detective McCord received another anonymous tip indicating that a Renaud Courtney was the perpetrator. McCord prepared a photographic lineup including Courtney's mugshot. The lineup was shown to Jupiter, Straub, and Cameron. None of the men identified Courtney as the perpetrator.
In late 1988, the police received another anonymous telephone call indicating that Charmaine, Germaine, and Karen Carter, who resided in the 2500 block of Governor Nicholls, were in a car with Jonathan Hawkins when Hawkins committed the crime. On February 27, 1989, Detectives McCord and Marco Demma contacted the Carter sisters. The women gave statements to the officers implicating the defendant as the perpetrator of the murder. The women testified at trial that they were home the evening of October 13, 1986, when the defendant stopped by and asked them to take a ride with him. While they were out, the defendant stopped at his home. The women waited in the car while the defendant went inside. When he returned to the vehicle, he was holding a gun wrapped in a white towel. They then drove around the uptown area until they saw a man walking on Freret. Hawkins stopped the vehicle and got out, taking the weapon with him. The defendant walked past the man, then doubled back and confronted him. When the shooting occurred, the women became frightened and drove home. The defendant arrived at the women's house shortly thereafter. He explained that he shot the man because he wouldn't "give it up."
Detective McCord showed the women Hawkins' mugshot. Each of the women identified Hawkins and initialed the photograph. On February 27, 1986, McCord arrested the defendant. The officers did not locate the murder weapon during a search of the defendant's residence.
As noted, the jury found the defendant guilty of first degree murder. The court of appeal affirmed. Defendant advances seven assignments of error.

EXCULPATORY EVIDENCE

Assignment of Error I
In this assignment, the defense claims that the state deliberately withheld material exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny. Defendant argues that the State failed to inform him prior to trial that (1) three months after the crime "photographic lineup" displays were made to Hugh Straub, who picked two "possibles"; (2) tips to police and/or Crimestoppers implicated two suspects other than Hawkins as the perpetrator; (3) a .38 revolver found in Hawkins' possession in an unrelated arrest two weeks after the murder was ballistically compared (with negative results) with the .38 bullet retrieved from the victim's body; and (4) a mugshot of Hawkins was displayed to Karen, Charmaine and Germaine Carter for identification purposes.
The due process clause of the Fourteenth Amendment to the United States Constitution requires the disclosure upon request of evidence which is favorable to the accused, when the evidence is material to guilt or punishment. The prosecutor may not suppress evidence which is favorable to the accused and material to either guilt or punishment. Brady v. Maryland, supra; State v. Sullivan, 596 So.2d 177 (La.1992). Favorable evidence includes both exculpatory evidence and evidence impeaching the testimony of a witness, when the reliability or credibility of that witness may be determinative of defendant's guilt or innocence, or when it may have a direct bearing on the sentencing determination of the jury. United *477 States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). When Brady matter is withheld, a defendant is entitled to a new trial only if the evidence is "material." Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, supra, at 678, 105 S.Ct. at 3381.
The photographic lineup shown to Mr. Straub included another possible suspect, but not the defendant. Mr. Straub stated that none of the men in the lineup was the perpetrator of this crime. This was not evidence that was exculpatory and material to defendant's case.
Defendant knew of at least one suspect provided to the police through tips, and evidence of two Crimestoppers tips with names was presented to the jury. Failure to provide information relating to other tips would not have produced a different result and thus was not material.
Defendant knew the state had a gun which had been found in defendant's possession during an unrelated arrest and subsequent to this offense. The state provided to the defense the negative ballistics test results prior to trial. This information was neither material nor exculpatory.
The Carter sisters personally knew the defendant and had identified him by name as the perpetrator before they were shown defendant's photograph. Thus, it also was neither material nor exculpatory.
The information allegedly withheld by the state must be "material" to the defendant's guilt or innocence to constitute Brady evidence. The Brady test is not met in this case because the evidence is not exculpatory or material. This assignment of error lacks merit.

HEARSAY EVIDENCE

Assignment of Error II
The defendant complains that the trial court erred in allowing the introduction of prejudicial hearsay evidence. The testimony of which the defendant complains occurred as followed:
BY THE PROSECUTOR:
Now what was the first big break that you got in this case?
BY DETECTIVE MCCORD:
From another anonymous call that stated that there were several individuals in the car with the perpetrator, Mr. Hawkins.
The trial court overruled the defendant's hearsay objection because the prosecutor stated that he was offering the detective's statement not for the truth but just as a result for what he did.[1]
Under La.Code Evid. art. 801, hearsay is defined as a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted therein. The content of an informant's tip may not be used at trial by a law enforcement officer because the testimony violates the accused's right to confront and cross-examine his accusers. State v. Hearold, 603 So.2d 731 (La.1992).
Under certain circumstances, the testimony of a police officer may encompass information provided by another individual without constituting hearsay if offered to explain the course of police investigation and the steps leading to the defendant's arrest. State v. Smith, 400 So.2d 587 (La.1981); State v. Calloway, 324 So.2d 801 (La.1976); State v. Monk, 315 So.2d 727 (La.1975). However, the fact that an officer acted on information obtained from an informant may be relevant to explain his conduct, but it may not be used as a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by *478 the hearsay rule. State v. Wille, 559 So.2d 1321 (La.1990); Hearold, supra.
The first part of the statement given by Detective McCord where he testified that the caller stated that there were several individuals in the car with the perpetrator was relevant and not hearsay. This testimony squarely fits with the rule set down by this Court. The detective was explaining the course of the police investigation and the steps leading to the defendant's arrest.
Nevertheless, hearsay testimony was given at trial when the detective finished the sentence by stating that the perpetrator was Mr. Hawkins. The testimony was inadmissible hearsay because it does not fall within any of the exceptions to La.Code Evid. art. 802.
We now must decide whether or not the hearsay testimony elicited at trial was harmless error. An error is harmless if the verdict rendered was surely unattributable to the error. La.Code Crim.P. art. 921. The correct standard of review is as follows:
Confrontation errors are subject to a Chapman [v. State of Cal., 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)] harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Id. at 684, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Id. at 684, 106 S.Ct. at 1438.
State v. Wille, 559 So.2d 1321 (La.1990).
During cross-examination, the defense made the jury aware of the fact that Detective McCord did not learn the name of the perpetrator from the anonymous tip, which occurred as follows:
BY DEFENSE COUNSEL:
Pursuant to your investigation, you learned that, according to the Carter sisters, who killed Professor Klingensmith, right?
BY DETECTIVE MCCORD:
That's correct.
Consequently, the fact that the defendant committed the crime did not come from the anonymous tip, but it came from the testimony of the Carter sisters. All three of the Carter sisters had testified previously and were cross-examined. Detective McCord testified after the Carter sisters who admitted their presence in the defendant's vehicle at the time of the crime and implicated the defendant as the perpetrator of the murder. As such, there was no evidence presented by the prosecution that the anonymous caller had any independent knowledge of the offense. At most, the comment referred the police to eyewitnesses, the Carter sisters, who could implicate defendant as the perpetrator.
Examining this phrase in the context of the Wille factors, the complained of comment was not important to the state's case, as the comment did not contain evidence of the defendant's guilt, but it only explained how the investigators developed defendant as a suspect. The detective's testimony was cumulative to the other testimony presented by the state to prove the defendant's guilt.
After a thorough review of the record, we hold that the error was harmless beyond a reasonable doubt. Accordingly, this assignment of error lacks merit.

RIGHT TO CROSS-EXAMINATION

Assignment of Error III
The defendant asserts that the trial court erred in limiting his cross-examination of Detective McCord. Defendant sought to introduce, through McCord, information on the two prior suspects. Specifically, defense counsel questioned McCord about the rap sheets of Roy Mason and Renaud Courtney. Defense counsel also asked the detective if *479 Mason was a "career criminal" and "violent person." The trial judge sustained the objections of the prosecution to this line of questioning.
The trial judge has discretionary power to control the extent of the examination of witnesses, provided the court does not deprive the defendant of his right to effective cross-examination. State ex rel. Nicholas v. State, 520 So.2d 377 (La.1988); La.Code Evid. art. 611.
A review of the trial transcript does not reveal that the trial judge's ruling denied the defendant of his fundamental right to confrontation. Further, the information contained in the rap sheets was not relevant. Thus, this assignment of error lacks merit.

PROSECUTORIAL COMMENTS

Assignment of Error IV
Defendant argues that the state improperly attacked the credibility and integrity of defense witnesses, investigators Elredge and Bob Smith, suggesting that they misrepresented themselves as a representative of the District Attorney's office in an effort to trick the Carter Sisters.
This argument is not supported by the record. To the contrary, the state offered to stipulate that Elredge had never worked for the District Attorney's office, and when the defense refused that stipulation, the state called Elredge and obtained his testimony to this effect. Elredge testified that he had never represented himself as a District Attorney employee. He described his method for obtaining statements and testified that, although statements were in his handwriting, they contained the witnesses' own words.
The court of appeal was correct in finding that the questioning of the witnesses was entirely proper and within the scope of cross-examination. Therefore, this assignment of error is without merit.

SUFFICIENCY OF THE EVIDENCE

Assignment of Error V
The defense argues that the trial evidence was insufficient, urging that no rational trier of fact could have found guilt beyond a reasonable doubt. Specifically, he asserts that the testimony of the three Carter sisters was so flawed and unreliable as render it unable to support a rational guilty verdict.
An appellate court reviewing a claim of insufficient evidence must determine that the trial evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). The elements must be sufficient that every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438. In circumstantial evidence cases, when the jury reasonably rejects the hypothesis of innocence offered by the defendant in his own testimony, "that hypothesis fails, and the defendant is guilty, unless there is another hypothesis which raises a reasonable doubt." State v. Captville, 448 So.2d 676, 680 (La.1984). If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be upheld. State v. Mussall, 523 So.2d 1305, 1310 (La.1988). However, if the appellate court finds that no rational trier of fact, viewing all the evidence from a pro-prosecution standpoint, could have found guilt beyond a reasonable doubt, the conviction cannot constitutionally stand. Id.
LSA-R.S. 14:30(A)(1) defines first degree murder as "the killing of a human being: [w]hen the offender has specific intent to kill or inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... armed robbery." The Carter sisters' testimony revealed that the defendant had the specific intent to kill and/or inflict great bodily harm on the victim and that the defendant was engaged in the perpetration of an armed robbery. They were in the vehicle when the defendant shot the victim, and they saw the defendant approach the victim and shoot him. Also, the defendant told the sisters that he shot the victim because he *480 "wouldn't give it up." The testimony of Louis Otto and his son corroborate that the perpetrator had taken the defendant's wallet. Immediately after the shooting, they saw the perpetrator leave the scene and throw the victim's wallet in some nearby bushes. The police retrieved the empty wallet from the bushes the next morning.
In the instant case, the jury made credibility determinations and accepted the testimony of the witnesses as true. This Court cannot say that the jury's determination was irrational. Thus, there was sufficient evidence for the jury to find, beyond a reasonable doubt, that the defendant was guilty of first degree murder. This assignment of error is without merit.

INCOMPLETE RECORD

Assignment of Error VI
The defendant argues that the appellate record is incomplete because of the lack of transcripts of opening statements, closing arguments and jury instructions, and thus, a reversal of the defendant's conviction is mandated.
An incomplete record may be adequate for full appellate review. State v. Thomas, 637 So.2d 1272 (La.App. 4 Cir.1994), writ denied, # 94-1725 (La. 11/18/94), 646 So.2d 376, cert. denied, Thomas v. Louisiana, ___ U.S. ___, 115 S.Ct. 1437, 131 L.Ed.2d 317 (1995). In State v. Rodriguez, 635 So.2d 391 (La.App. 4 Cir.1994), voir dire, arguments, and jury charges were not included in the transcript in the record on appeal. However, because the defendant could not show any prejudice from the missing portions, he was not entitled to relief based on the missing portions. Also, there exists a presumption of regularity in judicial proceedings. LSA-R.S. 15:432; State v. Leon, 638 So.2d 220 (La.1994); State v. Davis, 559 So.2d 114 (La.1990).
In the instant case, the defendant has not shown any prejudice from the missing portions. The record before the Court contains enough of the evidence for the Court to examine and determine that there is sufficient evidence to support the conviction. Therefore, the Court holds that the presumption of regularity in judicial proceedings must be applied. Consequently, this assignment of error is rejected.

JURY INSTRUCTIONS

Assignment of Error VII
In this assignment of error, the relator argues that he proposed a special jury instruction on the defendant's right to remain silent, and that the trial court refused to give this instruction.[2]
Under La.Code Crim.P. art. 807, a defendant has the right to submit requested special charges to the court. However, this Article also states that a special charge "need not be given if it is included in the general charge or in another special charge to be given." La.Code Crim.P. art. 807. Under La.Code Crim.P. art. 804(A)(1), the trial judge is required to charge the jury on the presumption of innocence. § 3.02 of the Louisiana Judges' Criminal Bench Book provides a sample charge on the burden of proof and the presumption of innocence which advises the jury that "the defendant is not required to prove that he is innocent" and that "the defendant begins the trial with a clean slate."
Although the record's lack of a transcript of the jury instructions makes it difficult to determine whether, in fact, this or a similar charge was given, the presumption of regularity of judicial proceedings controls. LSA-R.S. 15:432; State v. Davis, 559 So.2d 114 (La.1990). Consequently, because of the absence of any showing that the general charge required by La.Code Crim.P. art. 804 was omitted, the defendant cannot prevail on this claim.

*481 CONCLUSION
For the reasons expressed, Mr. Hawkins' conviction and sentence are affirmed.
AFFIRMED.
CALOGERO, C.J.,dissents and assigns reasons.
JOHNSON, J.,dissents.
VICTORY, J.,concurs.
CALOGERO, Chief Justice, dissents.
A strong argument presented by the defendant in this case is that there was insufficient evidence under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) to support this conviction, principally because the uncorroborated trial testimonies of the Carter sisters were inconsistent with prior statements given by the sisters to a defense investigator, and because those testimonies were inconsistent with each other in many respects. While that argument is not entirely without some potential merit, I am inclined to believe that there was sufficient evidence, viewed in the light most favorable to the prosecution, to support this conviction under Jackson.
However, the scarcity of the evidence highlights the closeness of this jury's decision. Because the only evidence of defendant's guilt in this case was the testimony of the Carter sisters, testimony corroborated solely by that portion of Detective McCord's testimony which the majority opinion concedes to be hearsay,[1] it cannot be said beyond a reasonable doubt that the jury was not influenced, in reaching its verdict, by that inadmissible hearsay statement. In my view it is therefore wrong to conclude, as has the majority, that the introduction of this hearsay evidence was harmless beyond a reasonable doubt. Accordingly, I dissent.
NOTES
[*] Judge Graydon K. Kitchens, Jr., District Court Judge, 26th Judicial District, and Judge Ian W. Claiborne, 18th Judicial District Court, participating as Associate Justices Pro Tempore, in place of Associate Justices Jack C. Watson and E. Joseph Bleich.

Lemmon, J., not on panel, Rule IV, pt. 2, § 3.
[1] During the questioning of the witness McCord, the prosecution elicited testimony from the witness which explained how anonymous tips were usually unreliable sources of information. The detective testified that he had already received two anonymous tips that were inaccurate.
[2] The court of appeal did not treat this assignment of error on the merits because it relied on the minute entries to determine that no objection to the jury charge was made. However, the minute clerk appeared to indicate that the court reporter had been delegated the responsibility for recording all objections. Because the defendant should not be penalized for this record-keeping error, this issue is treated on the merits.
[1] Detective McCord was asked by the prosecutor, "Now what was the first big break that you got in this case?" Detective McCord responded, "From another anonymous call that stated that there were several individuals in the car with the perpetrator, Mr. Hawkins." That portion of the testimony identifying Mr. Hawkins as the perpetrator constituted inadmissible hearsay.