742 So.2d 50 (1999)
STATE of Louisiana
v.
David L. PATTERSON, Defendant-Appellant.
No. CR99-27.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1999.
*51 Sheryl Lynn Laing, Alexandria, Charles F. Wagner, Dist. Atty., for State.
Joseph Richard Kutch, Pineville, David Leon Patterson, Gretna, for David Leon Patterson.
BEFORE THIBODEAUX, COOKS and PICKETT, Judges.
COOKS, Judge.
David L. Patterson was charged by a bill of information with committing armed robbery, a violation of La.R.S. 14:64. On September 15, 1998, he was tried before a twelve person jury which found him guilty of first degree robbery. Thereafter, the court sentenced him to serve twenty (20) years at hard labor without benefit of parole, probation or suspension of sentence. The defendant now appeals both the conviction and the sentence, advancing four assignments of error through counsel's brief. Defendant, through a pro se supplemental brief, advances an additional six assignments of error, overlapping counsel's assignments in most respects. We find merit in the counsel's second assignment of error which contends the court erred in admitting the hearsay testimony of Officer Sean O'Halloran. Finding that this assignment presents reversible error, we forgo addressing the remaining assignments of error.

FACTS
On February 28, 1998, Mary Hunter's purse was taken from her at gunpoint near her home in Alexandria. The following facts were revealed at trial. Between ten o'clock and ten-thirty in the morning, Mary Hunter was walking to her house on Parker Street in Alexandria when a black male approached from behind and pointed *52 a gun to her face. The assailant ordered Mrs. Hunter to give him her pocketbook and proceeded to snatch the purse from Mrs. Hunter's arm. He then took off running on Lee Street. Mrs. Hunter called the police to report the incident, and described the assailant to the police dispatcher as a slim and tall black male wearing a gray sweatshirt, gray sweat pants and a dark cap.
Based on that description, Officer Garland Richardson who was on patrol in the general area of the robbery noticed defendant who he thought partially fit Mrs. Hunter's description. The defendant was walking down Cedar Street which is in the opposite direction of Lee Street, where the assailant fled from the scene of the crime. Officer Richardson and another officer ultimately detained the defendant as he proceeded to walk between two apartment buildings and they conducted a search to determine if he was carrying a gun. The officers did not discover a gun but did seize roughly thirty dollars in bills and coins from the defendant's pockets. Shortly thereafter, Officer Mary Baker who first responded to Mrs. Hunter's call, brought Mrs. Hunter to the location where the defendant was detained, and she positively identified him as the man who robbed her. The defendant then was arrested.
At the defendant's trial, the defense called Raymond Johnson who testified, near the time of the robbery, he witnessed a man wearing a black and white or black and blue slip-over sweater with a particular design on it, dark pants, and a baseball cap run across his yard carrying a sack or plastic bag. Mr. Johnson further testified the individual running with the bag threw it underneath his neighbor's house, the location where Mrs. Hunter's handbag was later recovered. Mr. Johnson concluded his testimony by stating when the police brought the defendant to his house for identification a short time after, he told the officers the defendant was not the person he saw running through his yard. The prosecution offered rebuttal testimony from Officer Sean O'Halloran who related a conversation he later had with Mr. Johnson.

HEARSAY EVIDENCE
Defendant contends the trial judge erred in admitting the hearsay testimony of Officer Sean O'Halloran during the State's rebuttal. Officer O'Halloran related the later conversation he allegedly had with Raymond Johnson, Jr. which were admitted as a prior inconsistent statement. But defendant asserts the State did not properly question Mr. Johnson about his conversation with Officer O'Halloran, and thus failed to lay the proper foundation before the testimony was offered and admitted as a prior inconsistent statement. Further, defendant contends introduction of the statement was not harmless error, because there was no other evidence but the victim's "incredible testimony to tie the defendant to this crime."
A hearsay statement is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. La.Code Evid. art. 801(C); State v. King, 355 So.2d 1305 (La.1978). Hearsay is generally not admissible, unless subject to an exception found in the Code of Evidence or provided for by the legislature. La.Code Evid. art. 802. Two important hearsay exceptions encompass testimony given at trial that is inconsistent with prior statements made by the witness. A prior inconsistent statement is not hearsay if it is one made by a declarant who testifies at trial, and the inconsistent statement was previously given, "under oath subject to the penalty of perjury at the accused's preliminary examination or the accused's prior trial ..." La.Code Evid. 801(D)(1)(a). In order for the prior inconsistent statement to be admitted under this provision, the declarant testifying must be subject to cross-examination concerning the prior statement. La.Code Evid. 801(D)(1).
*53 Prior inconsistent statements are also considered admissible when used solely to impeach or attack a witness' credibility. La.Code Evid. art. 607 provides a proponent may attack the credibility of a witness through the use of extrinsic evidence which contradicts the witness' testimony, provided that a proper foundation is laid for such extrinsic evidence as provided by La.Code Evid. art. 613. La.Code Evid. art. 613 states that extrinsic evidence of a prior inconsistent statement is admissible if the proponent fairly directed the witness' attention to the statement, act, or matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so. La.Code Evid. art. 613; State v. Smith, 687 So.2d 529 (La.App. 3 Cir.1996); State v. Roy, 502 So.2d 265, 268 (La.App. 3 Cir.1987).
In the present case, the prosecution called Officer O'Halloran as a rebuttal witness and questioned him regarding his conversation with Mr. Johnson as follows:
Q. The defendant, Mr. Patterson, was he brought to Martin Street ... or to the street where Mr. Johnson was?
A. Yes, he was.
Q. Okay. And what was Mr. Johnson's response upon seeing the defendant on his street?
A. He wasn't positive that was him.
Q. What was his response?
A. His response was, "I have bad eyesight, and I cannot positively say that that is the guy that ran through my yard."
It is clear the non-hearsay exception of article 801(D) is inapplicable to Mr. Johnson's statement to Officer O'Halloran; and the intended use by the prosecution of the alleged inconsistent statement was solely to impeach Mr. Johnson's credibility. As a witness for the defense, Mr. Johnson was available for cross-examination by the prosecution on the nature and extent of any conversation he had or may have had with Officer O'Halloran. The only testimony elicited from Mr. Johnson by the prosecution on this matter follows:
Q. Mr. Johnson, so when the police brought Mr. Patterson to your house, did you tell them you didn't know him or that you didn't want to identify him?
A. He toldthe police asked me was thathe took him out the car. He brought him to themy fence. I got a porch screened and glassed up. He said, "well, Mr. Johnson, you ain't got to come outside." And so he brought that gentleman over there, and he come over there. And I looked out there. I said, "No. That's not the man I seen running from over there."
The prosecution posed no further questions to Mr. Johnson to suggest his trial testimony was inconsistent with a prior statement made to Officer O'Halloran. The threshold question is whether the prosecution fairly directed Mr. Johnson's attention to the prior statement, and then offered Mr. Johnson an opportunity to admit or deny that he previously told Officer O'Halloran, "I have bad eyesight, I cannot positively say that that is the guy that ran through my yard" or words to that effect. The trial court allowed this line of hearsay testimony as a prior inconsistent statement of the witness, overruling repeated objections from defense counsel.
The State directs this court's attention to State v. Roy, 502 So.2d 265, 269 (La.App. 3 Cir.1987), noting we said:
The foundation for impeachment was properly laid. Informed of the time, place and circumstances of the statement, Mary was asked if she had told Detective Flynn that she saw Joseph hit the baby. She denied that she had seen anything. She was asked if she remembered telling the detective that Joseph was mad at her and she answered she did not remember. From then on, evidence that she made the statements was admissible.
*54 This court agrees, under the circumstances in Smith, the witness' attention was properly directed to the prior statement, and the opportunity to admit the fact was offered. However, in the present case, no reasonable inference can be drawn from the exchange between the prosecution and Mr. Johnson to suggest that his attention was directed to the statement later offered by Officer O'Halloran, nor that Mr. Johnson was ever afforded an opportunity to admit or deny having made the statement. The prosecution simply failed to establish the requisite foundation to impeach Mr. Johnson with the prior inconsistent statement; and Officer O'Halloran's hearsay testimony was erroneously admitted at trial. However, this finding does not end our inquiry.
We must also decide whether the erroneous admission of the hearsay evidence elicited at trial was harmless error. State v. Hawkins, 96-0766 (La.1/14/97); 688 So.2d 473. The Louisiana Code of Criminal Procedure provides an error is harmless if the verdict rendered is surely not attributable to the error. La.Code Crim.P. art. 921. The factors considered in this review include, "the importance of the witness' testimony ..., whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecutions case." State v. Wille, 559 So.2d 1321 (La.1990)(citing Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). The ultimate determination for this court to reach is whether we can say beyond a reasonable doubt the jury did not rely on the improper hearsay evidence in determining the defendant is guilty. State v. Hearold, 603 So.2d 731, 739 (La.1992)(citing Yates v. Evatt, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991); State v. Gibson, 391 So.2d 421 (La.1980)).
A review of the record reveals the jury's verdict rests solely upon its credibility assessments of the witnesses who testified. Aside from the victim's testimony identifying the defendant as the robber, no other direct evidence linked the defendant to the crime. The credibility of the witnesses at trial, therefore, played a substantial role in both the prosecutions case and the jury's deliberation. The relative importance of Officer O'Halloran's improperly admitted hearsay testimony, attacking the credibility of Mr. Johnson, is evident when considered in this context.
Mr. Johnson testified he witnessed the victim pursuing the assailant near the location of the crime, and he watched the assailant throw a bag underneath his neighbor's house. He further testified the defendant was not the individual he witnessed do these acts. Moreover, the record does not contain other substantial evidence discrediting Mr. Johnson's trial testimony, thereby suggesting Officer O'Halloran's testimony might have been cumulative and thus caused no harm. Accordingly, we cannot say beyond a reasonable doubt the erroneously admitted evidence did not sway or affect the jury's verdict.
Having found defendant's assignment of error number two meritorious, we pertinent considering the remaining errors assigned for review.

DECREE
For the foregoing reasons, defendant's conviction and sentence are reversed and remanded.
REVERSED AND REMANDED.