942 So.2d 45 (2006)
STATE of Louisiana
v.
Marvin LEGENDRE.
No. 2005-KA-1469.
Court of Appeal of Louisiana, Fourth Circuit.
September 27, 2006.
*47 Eddie J. Jordan, Jr., District Attorney, Michael G. Morales, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge LEON A. CANNIZZARO JR.).
PATRICIA RIVET MURRAY, Judge.
This is a criminal case. The defendant, Marvin Legendre, appeals his conviction and sentence for attempted armed robbery. In his sole assignment of error, he asserts a Confrontation Clause violation under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). For the reasons that follow, we affirm.

STATEMENT OF THE CASE
On October 4, 2002, the State filed a bill of information charging Mr. Legendre with one count of armed robbery, a violation of La. R.S. 14:64. On October 11, 2002, Mr. Legendre was arraigned and entered a plea of not guilty. On December 19, 2002, the district court conducted a combined preliminary hearing and motion to suppress identification hearing. At the conclusion of the hearing, the court found probable cause and denied the motion to suppress. On the same day, the State amended the bill to correct the spelling of the victim's name, and Mr. Legendre maintained his plea of not guilty. On October 30, 2003, the State filed a motion to invoke the firearm sentencing provisions of La.C.Cr.P. art. 893.3.
On November 14, 2003, a second motion to suppress the identification hearing was held. The motion was again denied. On January 5, 2004, a twelve-person jury tried the case. The jury returned a responsive verdict of guilty of attempted armed robbery, a violation of La. R.S. 14:27 (attempt) and 14:64 (armed robbery). On November 30, 2004, the district court sentenced Mr. Legendre to serve thirteen years at hard labor without the benefit of probation, parole, or suspension of sentence. The court also designated the offense as a crime of violence. This appeal followed

*48 STATEMENT OF THE FACTS

On July 24, 2002, Antia Taylor, who had just cashed her payroll check, was standing outside a fast food restaurant on St. Claude Street in New Orleans, talking on her cell phone. When she hung up the phone, a man passed by her on a bicycle. The man, whom she later identified as Mr. Legendre, then put his bicycle down and walked onto a porch. As soon as Ms. Taylor walked by him, the man jumped in front of her and demanded her money. At first she thought he was joking. When she saw he was holding a gun, she realized he was serious. Although she gave him her purse, he returned it to her, and he instructed her to take out the money and give it to him. After she complied, the man demanded that she give him her cell phone. A neighbor walked out from a gate, and asked Ms. Taylor if she was all right. The robber immediately jumped on his bicycle and fled. The neighbor attempted to catch him, but was unable to do so. The neighbor then assisted Ms. Taylor in calling 911.
Officer Charles Augustus was the first police officer to arrive at the scene. Ms. Taylor provided him with a description of the robber as a black male, approximately nineteen or twenty years old, wearing a white t-shirt, black jean shorts, and short twists in his hair. She described the robber's height and weight as approximately five feet five inches and one hundred twenty pounds. However, she did not describe the robber as having any gold teeth.
Officer Augustus turned the investigation over to Detective Mark McCourt, who also interviewed Ms. Taylor at the scene. After learning that her cell phone had been stolen, Detective McCourt instructed Ms. Taylor not to have the phone turned off immediately because the robber might use it. Detective McCourt then obtained subpoenas duces tecum for the cell phone records in hopes that the information would lead to the robber's identity. Through investigation, Detective McCourt obtained the first name "Marvin." He also obtained the information that "Marvin" matched the description of the robber provided by Ms. Taylor. Based on that information, Detective McCourt placed Mr. Legendre's photograph in a photographic line-up. On August 2, 2002, Detective McCourt showed the line-up to Ms. Taylor. She immediately identified Mr. Legendre's photograph as that of the person who robbed her. She also positively identified him in court at both the pretrial motion hearing and trial.
At trial, the defense attempted to impeach the testimony of Detective McCourt and Ms. Taylor regarding the photographic line-up. The defense presented Ms. Taylor's testimony from the pretrial motion hearing. At that hearing, she testified that the detective informed her that someone had been arrested, that the police had two line-ups (not one), and that she could not identify anyone from one of the line-ups. At trial, both Detective McCourt and Ms. Taylor testified that she was shown only one line-up. Ms. Taylor also testified at trial that she absolutely identified Mr. Legendre from the line-up and that she could not remember being shown two sets of photographs. Ms. Taylor also admitted that she told the police that the robber was taller than she is and that she is approximately five feet seven inches tall.
Mr. Legendre was the sole defense witness. He denied committing the armed robbery of Ms. Taylor. He testified that he had never been convicted of a crime. He also testified that he has had gold on his bottom teeth since 1998 or 1999 and that he is approximately five feet five or six inches tall. The State did not cross-examine him.

*49 ERRORS PATENT

A review of the record for errors patent reveals that there are none.

DISCUSSION
As noted at the outset, Mr. Legendre's sole assignment of error is that his right to confront his accusers under Crawford was violated. Mr. Legendre complains of the following testimony given by Detective McCourt on direct examination:
Q. When you received those [cell phone] records from the subpoena, how did you proceed with your investigation?
A. I re-subpoenaed the names of the individuals assigned to those phones and I attempted to make contact with those people. I was able to make contact with one individual and I informed that person that I was conducting an armed robbery investigation and I provided a description ofas provided to me by Ms. Taylor
BY MR. JENKINS [THE STATE'S ATTORNEY]:
Objection to any alleged statements made by another third person.
THE COURT:
The witness hasn't given any statement.
BY MR. JENKINS:
I know but I'm trying to prevent a mistrial by saying it early.
THE COURT:
Okay. Continue.
BY DETECTIVE MCCOURT:
Based upon the description I provided I was then, in turn, provided with a first name of, Marvin.
BY MR. JENKINS:
Objection again. That's hearsay if they don't have an alleged witness to come in to allege that this happened it becomes hearsay. And actually, Your Honor, it is just speculative in nature.
BY THE COURT:
Over ruled [sic]. The Officer can testify as to what he did.
BY MR. JENKINS:
Correct, but not in terms to what allegedlyIf it's provided somebody had to tell him that's what he did.
BY THE COURT:
Based on information he received the Officer did something.
BY MR. JENKINS:
Right. That's what I'm saying, not someone provided him.
BY THE COURT:
So based on whatever information you received you are free to tell the jury what you did.
BY DETECTIVE MCCOURT:
I received some information
BY MR. JENKINS:
Objection to hearsay, Judge. He knows it because he's looking at me.
BY THE COURT:
You can tell the juryJust tell the jury what you did. Based on some information you received you
BY DETECTIVE MCCOURT:
I then obtained a photograph of Marvin Legendre from the Motions Computer.
Mr. Legendre complains that the district court, over the objection of defense counsel,[1] allowed Detective McCourt to *50 testify that he interviewed an unidentified witness who told him that "Marvin" was the person who used the victim's cell phone after it had been stolen. Mr. Legendre contends that this testimony by Detective McCourt constituted impermissible hearsay. He points out that two months after his trial the United States Supreme Court in Crawford held that the admission of "testimonial" hearsay is a confrontation violation. He argues that the testimony at issue is clearly "testimonial" because it is "[a] statement made knowingly to the authorities that describes criminal activity." United States v. Cromer, 389 F.3d 662, 673 (6th Cir.2004).
Mr. Legendre further argues that the district court erred in suggesting that the testimony was introduced for a valid non-hearsay purposeas investigative background information offered merely to show why the officer took a certain course of conduct in response to what he was told. (As discussed below, this non-hearsay purpose is referred to as the explanation exception to the hearsay rule.) He argues that the State lacked a legitimate purpose for Detective McCourt's hearsay testimony. He further argues that the jury did not need to know the precise manner in which the detective came to include his photograph in the line-up; rather, it sufficed for the jury to be told that the photograph matched the description the victim provided. He still further argues that Detective McCourt's testimony was used to bolster the State's case as to identity by allowing him to suggest to the jury that the unidentified witness, who must have personally known Mr. Legendre, was able to link him to the crime. Mr. Legendre thus argues that he is entitled to a new trial.
The State counters that the trial court did not err in finding that the explanation exception applies. Under that exception, the State contends that the trial court properly allowed the testimony to show that Mr. Legendre's name was obtained pursuant to an investigation and not some nefarious police activity. Even assuming the testimony was erroneously admitted, the State contends that the error was harmless. The State notes that the testimony contained no evidence of Mr. Legendre's guilt; rather, it explained how his name was developed to be included into a photographic lineup for the victim to view.
Hearsay is defined as an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. arts. 801 A(1) and 801 C. Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. Hearsay evidence is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability. State v. Everidge, 96-2665, p. 7 (La.12/2/97), 702 So.2d 680, 685.
As noted, Mr. Legendre's evidentiary argument is two-pronged. First, he alleges a Crawford violation. Second, he alleges the trial court erred in finding the explanation exception to the hearsay rule applies. We separately address each prong of his argument.
Crawford violation
Although Crawford was decided two months after Mr. Legendre's trial, the jurisprudence *51 has applied it retroactively. State v. Cox, 04-42, pp. 7-8 (La.App. 3 Cir. 6/16/04), 876 So.2d 932, 938 (collecting cases finding Crawford applies retroactively to cases tried before it was decided). The hallmark of the Crawford case is that it divorced the Sixth Amendment Confrontation Clause analysis from the traditional hearsay exceptions under the rules of evidence. The Crawford case replaced the reliability analysis enunciated in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), with a categorical rule requiring both that the witness be unavailable and the defense have a prior opportunity to cross examine the witness.[2] The Supreme Court, however, confined the application of the categorical rule to "testimonial" statements. As to "non-testimonial" statements, the Roberts reliability analysis still applies. The application of Crawford thus turns on the classification of the statement at issue as "testimonial."
Despite the significance of the term "testimonial" to the holding in Crawford, the Supreme Court expressly declined to give a complete definition to that term. Nonetheless, the Court engaged in a general discussion of the meaning of "testimonial" statements. First, the Court enumerated the following three formulations of the "core class" of "testimonial" statements:
[i] "ex parte in-court testimony or its functional equivalentthat is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," . . .
[ii] "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," . . . [and]
[iii] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."
Crawford, 541 U.S. at 51-52, 124 S.Ct. at 1364. The Court further noted that "some statements qualify under any definition-for example, ex parte testimony at a preliminary hearing." Crawford, 541 U.S. at 52, 124 S.Ct. at 1364. The Court still further noted that "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." Id. Finally, the Court noted:
Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.
Crawford, 541 U.S. at 68, 124 S.Ct. at 1374.[3]
*52 Applying these principles to Detective McCourt's testimony at issue, we find, as Mr. Legendre contends, that it is testimonial. The unidentified witness was not shown to be unavailable and Mr. Legendre never had an opportunity to cross-examine the witness. However, this does not end our inquiry. Confrontation errors, including Crawford violations, are subject to a Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), harmless error analysis. Cox, 2004-42 at pp. 9-10, 876 So.2d at 939. The proper standard of review is as follows:
The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. . . . Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."
State v. Wille, 559 So.2d 1321, 1332 (La. 1990).
Given the victim's testimony and her positive identification of Mr. Legendre both in the photograph line-up and at trial as the man who robbed her, we find Detective McCourt's hearsay testimony did not contribute to the verdict. Moreover, the jury was fully apprised before Detective McCourt's testimony that he hoped to obtain information through the victim's cell phone records that would lead to the robber's identity. The specific fact that the detective was given a first name "Marvin" matching Mr. Legendre's first name was implicit in the resulting inclusion of his photograph in a line-up. Thus, the admission of the testimony was harmless error.
The unidentified witness's statement to Detective McCourt that "Marvin" matched the description provided by the victim similarly was harmless error. Whether Mr. Legendre matched the description was something that the jury could determine for itself by looking at him. Thus, the jury was in the unique position of determining for itself whether there was any credibility to the unknown person's belief that "Marvin" matched the description and Detective McCourt's belief that Mr. Legendre was "Marvin." Notably, there was extensive trial testimony regarding the description provided by the victim to the police, and the jury had ample opportunity to make this determination. This testimony coupled with the victim's out-of-court and in-court identification leads to the conclusion that any error did not contribute to the verdict and was harmless.
Explanation Exception to Hearsay Rule
The other prong of Mr. Legendre's evidentiary argument is that the trial court erred in relying on the explanation exception to the hearsay rule. The Louisiana Supreme Court summarized this exception as follows:
The testimony of a police officer may encompass information provided by another individual without constituting hearsay, if it is offered to explain the course of the police investigation and the steps leading to the defendant's arrest. State v. Monk, 315 So.2d 727, 740 (La. 1975); See also State v. Wille, 559 So.2d *53 1321, 1331 (La.1990); State v. Smith, 98-1417 (La.6/29/01), 793 So.2d 1199. However, this exception does not allow the state carte blanche authority to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. State v. Wille, 559 So.2d 1321, 1331 (La. 1990); State v. Hearold, 603 So.2d 731, 737 (La.1992).
State v. Maise, XXXX-XXXX, p. 17, (La.1/15/02), 805 So.2d 1141, 1153.
The explanatory exception has also been summarized as follows:
In criminal cases, the arresting or investigating officer will often explain [his actions] . . . by stating that he did so `upon information received' and this of course will not be objectionable as hearsay, but if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded as hearsay.
McCormick on Evidence, § 248 (2d ed.1972).
The jurisprudence requires that courts exercise great caution in invoking the explanation exception so as to allow this type of testimony. State v. Broadway, 1996-2659, pp. 8-9 (La.10/19/1999), 753 So.2d 801, 809; Wille, 559 So.2d at 1331 (citing McCormick on Evidence § 249 (3d ed.1984))(noting that admission of such testimony under the explanation exception is an "area of widespread abuse"). "The mere fact that an arresting officer had acted on information might be relevant admissible non-hearsay (as, for example, to explain the police officer's conduct), but this vehicle for the admissibility of the fact that the officer acted upon information should not become a passkey to get to the jury the substance of the out-of-court information, directly or indirectly, that otherwise might be barred by the hearsay rule." George Pugh, Louisiana Evidence Law, 429-430 (1974). "While the statements arguably have some probative value (explaining the officer's actions and providing a `complete story'), the statements may have strong probative worth on the issue of the criminal defendant's guilt." 19 Frank L. Maraist, Louisiana Civil Law Treatise: Evidence and Proof § 10.1, n. 4 (2006 Supp.). Explaining this distinction, the Louisiana Supreme Court in Wille stated:
When an out-of-court statement, such as information received by a police officer during an investigation of a crime, has both an impermissible hearsay aspect and a permissible nonhearsay aspect, the issue of relevancy becomes significantly interrelated with the hearsay issue. If the nonhearsay content of the statement has little or no relevance, then the statement should generally be excluded on both relevance and hearsay grounds. Marginally relevant nonhearsay evidence should not be used as a vehicle to permit the introduction of highly relevant and highly prejudicial hearsay evidence which consists of the substance of an out-of-court assertion that was not made under oath and is not subject to cross-examination at trial.
Wille, 559 So.2d at 1331.
"Generally, an explanation of the officer's actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called `explanation' involves a direct assertion of criminal activity against the accused." State v. Hearold, 603 So.2d 731, 737 (La. 1992); State v. Preston, 623 So.2d 938, 941 (La.App. 4th Cir.1993). An appropriate analysis of this issue focuses on whether the officer's reason for suspecting or arresting the defendant is "sufficiently relevant at the trial on the merits as to offset the prohibited (and thus unfairly prejudicial) *54 hearsay use of the out-of-court statements." George W. Pugh, et al., Handbook on Louisiana Evidence Law, 545 (2006 ed.). "Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an `explanation' exception." State v. Hearold, 603 So.2d 731, 737 (La.1992).
The application of this exception is illustrated in State v. Hawkins, XXXX-XXXX (La.1/14/97), 688 So.2d 473. In that case, the investigating officer testified that an anonymous caller reported that there were three women in the vehicle with the defendant, who the caller stated was the perpetrator of the robbery and murder. The detective interviewed the women, who gave statements inculpating the defendant. They later testified at trial. The defendant objected to the testimony of the detective regarding the substance of the tip he received.
On review, the Louisiana Supreme Court in Hawkins held that the first part of the detective's testimony regarding the tiphis testimony that the caller stated that there were several individuals in the car with the perpetratorwas relevant and not hearsay. The court stated that this testimony squarely fit within the explanatory exception, because this testimony merely explained the course of the police investigation and the steps leading to the defendant's arrest. Hawkins, XXXX-XXXX at p. 5, 688 So.2d at 478. The Court, however, found that the second part of the testimony setting forth the substance of the tip provided by the callerhis testimony that the perpetrator was the defendantconstituted inadmissible hearsay because it did not fall within any of the exceptions to La. C.E. art. 802. Id. The court, however, did not end its analysis at that point. Rather, it held that such evidentiary errors are confrontation errors, which are subject to a Chapman harmless error analysis. Based on that analysis, the court found that the admission of the testimony was harmless as it was not important to the State's case and cumulative to the trial testimony of the witnesses who were in the vehicle with the defendant and who had actually been the persons who gave the defendant's name to the investigating officer.
Similarly, in State v. Thompson, XXXX-XXXX (La.App. 4 Cir. 1/26/00), 752 So.2d 293, a narcotics case, we held that an officer's testimony that he confirmed the first name and description of the suspect that an informant had given him constituted inadmissible hearsay. We reasoned that "[a]lthough . . . [the officer] did not go into detail concerning the information he had received by telling the jury the name and description, the jury could nevertheless have . . . inferred that [the defendant] Thompson was the person whose first name and description were confirmed." Thompson, XXXX-XXXX at p. 6, 752 So.2d at 297. Nonetheless, we found the error harmless given the other evidence establishing the State's case.
Analogously, we find Detective McCourt's testimony that the unidentified witness provided him with the first name Marvin constituted inadmissible hearsay. Nonetheless, we find, as discussed above in addressing the Crawford violation issue, that the introduction of Detective McCourt's hearsay testimony was harmless error. We thus find this assignment of error without merit.

DECREE
For the forgoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
CANNIZZARO, J., concurs in the result.
*55 CANNIZZARO, J., concurs in the result.
Although I concur in the result reached by the majority, I think that the majority has made quite a stretch in finding that the Crawford case is applicable in the instant case, when the facts in the Crawford case and the facts in the instant case are not at all similar. I also see no need to rely on the Crawford case, because even if the police officer's testimony regarding "Marvin" is hearsay (something that I do not concede), admitting the testimony was at worst harmless error. If the testimony was not hearsay, then the testimony was admissible. I do not think that the discussion on "testimonial" statements is at all applicable in the instant case, and I do not think it should have been included in the majority opinion, even as dicta.
NOTES
[1] We note that it is unclear if defense counsel's objection was overruled as the district court agreed that Detective McCourt should limit his testimony only to what he did and not to what he was told, in essence sustaining defense counsel's objection to any hearsay. Notably, defense counsel did not ask for an admonishment or mistrial at any time. When the trial court sustains an objection and defense counsel fails to request an admonition or a mistrial, the defendant cannot later raise the issue on appeal. State v. Dank, XXXX-XXXX, pp. 10-11 (La.App. 4 Cir. 5/24/00), 764 So.2d 148, 158; State v. Biagas, 1999-2652, p. 11 (La.App. 4 Cir. 2/16/00), 754 So.2d 1111, 1117-18 (citing State v. Baylis, 388 So.2d 713, 720-721 (La.1980)). However, the trial court did initially overrule defense counsel's objection, and thus the issue was preserved for appellate review.
[2] In Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court held that an "adequate indicia of reliability" is required before out of court statements can be admitted. If the statement at issue falls within one of the firmly rooted hearsay exceptions, reliability can be inferred.
[3] Recently, the Supreme Court in Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), which involved a 911 call, enunciated the following rule regarding the classification of statements as "testimonial":

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
126 S.Ct. at 2273.