WICKER, J.,
concurs and assigns reasons.
lil agree with the majority that the defendant’s conviction should be affirmed but write separately to address in detail the errors assigned regarding other crimes evidence and hearsay evidence.

Other Crimes Evidence:

Defendant asserts that the trial court should not have admitted evidence of the other crimes of alleged sexual abuse. Defendant claims the evidence of alleged other crimes was overwhelmingly prejudicial and not probative of any matter at issue in the instant case. Louisiana Code of Evidence article 412.2 provides that when an accused is charged with a crime involving sexually assaultive behavior or with acts that constitute a sex offense involving a minor victim, evidence of the accused’s commission of another crime, wrong, or act involving sexual assaultive behavior or which indicates a lustful disposition toward children may be admissible subject to the balancing test provided in La. C.E. art. 403. That article provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.
Any inculpatory evidence is “prejudicial” to a defendant, especially when it is “probative” to a high degree. State v. Rose, 2006-0402, p. 17 (La.2/22/07), 949 So.2d 1236, 1244; State v. Germain, 433 So.2d 110, 118 (La.1983). In conducting |2the balancing test under La. C.E. art. 403, the trial court should consider whether the probative evidence of prior acts will serve to “lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.” Old Chief v. *630 United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650,136 L.Ed.2d 574 (1997).
The Louisiana Supreme Court has advised that the volume of other crimes evidence should be considered in determining if such evidence should be admissible at trial. State v. Kelly, 01-0124, p. 2 (La.6/29/01), 791 So.2d 1286, 1287. The Court has further instructed that prior crimes evidence which may be “cumulative, repetitive, or excessive” should not be admitted. Kelly, 01-0124, p. 2 (La.6/29/01), 791 So.2d at 1287. In considering the volume and extent of evidence presented on other crimes, the court should evaluate whether “[t]he volume of the state’s evidence of other crimes creates an undue risk that at trial it may overwhelm the single allegation” of the charged offense. Id.
In the case before us, the three minor female victims, L.P., J.W., and J.A. testified cogently and in detail as to their experiences with defendant. L.P. testified that she visited defendant’s home regularly and that defendant gave her money to buy candy. She testified that, during one visit, defendant touched her inside of her pant- ’ ies and “wiggled” his finger around. J.W. testified that she visited defendant’s home regularly and would sometimes eat dinner with defendant’s family. She also stated that defendant gave her money to buy candy. J.W. testified that, during one visit at defendant’s home, defendant pulled J.W. onto his lap and touched her “private part.”
The mothers of L.P. and J.W., in their testimony, recounted the testimony presented by their children. L.P.’s mother testified that L.P. and J.W. reported that “Mr. Carlos had touched them in their private parts[.]” She further testified that her daughter reported that “Mr. Carlos was on a chair outside, sitting down, and he | shad unzipped his pants and pulled out his penis and made her sit on top of him.” J.W.’s mother testified she learned that “Carlos Hernandez had touched my daughter.” The jury further heard the audiotape of J.W.’s mother’s call to 911 reporting defendant’s alleged abuse of J.W. and L.P.; in that recorded call, J.W.’s mother recounted her daughter’s testimony that defendant put his hands inside her pants and touched her “private[.]”
Detective Horne, the investigating detective, also testified concerning her investigation of the allegations made by each female victim. Concerning L.P. and J.W., Detective Horne testified the girls reported that defendant “fondled” their “vaginal area[.]” Detective Horne reiterated the girls’ testimony and stated, “[t]hey disclosed to me that their neighbor who they identified as Mr. Carlos, they were by his house outside by a chair, he had called them over, sat one of the girls on his lap and slid his hands down her pants and panties and fondled her vaginal area. The other neighbor came looking for the girl, at which time he scooped up the other girl, put her on his lap and did the same thing, skin to skin, hand, vaginal contact.” Concerning J.A., Detective Horne testified to J.A.’s allegations that she was “playing video games at which time Mr. Hernandez had called her in the same bedroom and slid his hands down her panties and it was again skin to skin contact with her vaginal area.”
Dr. Adrienne Atzemis, a pediatrician with Children’s Hospital, testified concerning the physical examination of each victim. As to the three female victims, L.P., J.W., and J.A., Dr. Atzemis testified that the girls alleged an incident of “sexual abuse” and identified “Carlos” as the perpetrator of “digitial-genital” contact. Concerning L.P., Dr. Atzemis further testified that L.P. additionally reported “exposure to pornography by Carlos[.]” Dur *631 ing Dr. Atzemis’ initial testimony, the state introduced into evidence and displayed to the jury photographs |4of the minor female victims to demonstrate the age and appearance of each victim at the time of examination.
The child advocacy center representative, Erika Dupepe, testified that she interviewed each female victim separately and that each interview was recorded on video. During each interview, the minor victims describe in detail the allegations of sexual abuse by defendant and recount the allegations described in their testimony. The three separate video recordings of the interviews of each minor female victim, ranging from eleven minutes to nineteen minutes in length, were introduced into evidence and each played for the jury.
In this case, the trial court’s difficult task of balancing the state’s right to present evidence of a lustful disposition towards children against the danger that the volume of the state’s other crime evidence would overwhelm the charged offense was rendered more difficult by the fact that there are three other minor victims in addition to K.A., the minor victim in this case. With that said, the evidence presented in this case concerning the prior incidents involving L.P., J.W., and J.A. is significant and extensive. The trial court permitted the testimony of the three female minor victims, who testified cogently and in detail concerning their experiences with defendant. The court then permitted the testimony of the mothers of L.P. and J.W., the investigating detective, and the treating physician, who each recounted the testimony presented by the minor children of their experiences with defendant. The court further admitted into evidence the recorded video interviews of each victim in which they describe in detail the same or similar allegations of sexual abuse by defendant as contained in their testimony at trial.
While the state is entitled to produce and the jury entitled to hear the testimony regarding the three female victims and their terrible experiences involving defendant, the trial court would have been well served to proceed with | ¿caution, to consider the volume of the prior crimes evidence to be admitted at trial, and to limit the cumulative, repetitive, and excessive nature of the testimony and evidence presented.

Hearsay Evidence:

Defendant asserts that the trial court erred in admitting inadmissible and prejudicial hearsay involving the testimony provided by the investigating officers. Hearsay is defined as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” LSA-C.E. art. 801(C). A narrow exception to this hearsay rule has been created to permit a police officer to testify to the course of the police investigation and the steps leading to the defendant’s arrest. State v. Addison, 05-878, pp. 11-13 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 892-93, writ denied, 2006-1087 (La.11/9/06), 941 So.2d 36; State v. Hebert, 02-1252, pp. 5-7 (La.App. 5 Cir. 4/8/03), 846 So.2d 60, 64 (citing State v. Cho, 02-274, pp. 17-18 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 447, writ denied, 02-2874 (La.4/4/03), 840 So.2d 1213).
The Louisiana Supreme Court has discussed this explanation exception to the hearsay rule as follows:
The testimony of a police officer may encompass information provided by another individual without constituting hearsay, if it is offered to explain the course of the police investigation and the steps leading to the defendant’s arrest. State v. Monk, 315 So.2d 727, 740 (La. *632 1975); See also State v. Wille, 559 So.2d 1321, 1331 (La.1990); State v. Smith, 98-1417 (La.6/29/01), 793 So.2d 1199. However, this exception does not allow the state carte blanche authority to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. State v. Wille, 559 So.2d 1321, 1331 (La. 1990); State v. Hearold, 603 So.2d 731, 737 (La.1992).
State v. Maise, 2000-1158, p. 17, (La.1/15/02), 805 So.2d 1141,1153.
|fiThe jurisprudence requires that courts exercise great caution in invoking the explanation exception. State v. Broadway, 1996-2659, pp. 8-9 (La.10/19/1999), 753 So.2d 801, 809. “Generally, an explanation of the officer’s actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called ‘explanation’ involves a direct assertion of criminal activity against the accused.” State v. Hearold, 603 So.2d 731, 737 (La. 1992). Further, testimony of a police officer that repeats definite complaints of a particular crime by the accused is likely to be misused by the jury as evidence of the fact asserted and should thus not be admitted. McCormick on Evidence, § 248 (2d ed.1972); State v. Legendre, 05-1469, pp. 11-13 (La.App. 4 Cir. 9/27/06), 942 So.2d 45, 53.
In the case before us, the testimony of the investigating officers contains repeated hearsay statements that should not have been admitted by the trial court. Although defense counsel failed to object to various statements made by the investigating officers, he did object timely to some hearsay testimony admitted. For example, Deputy Cannatella testified that “I learned that [K.A.] was questioned by his mother about if his stepfather, Carlos Hernandez, ever .touched him inappropriately, and his response was yes.” Later, when Detective Horne testified, she stated that she learned from L.P. that “she had been sexually abused by her neighbor,” who Detective Horne immediately thereafter clarified to be “Mr. Carlos.” Based upon a review of the record, it appears these statements made by investigating officers do not fall within the narrow explanation exception but rather involve direct assertions of criminal activity by the accused and out-of-court statements used as evidence of the facts asserted therein. Thus, these statements should not have been admitted by the trial judge. The admission of hearsay is subject to a harmless error analysis on review by the Court, and in this case, where the evidence of the defendant’s guilt is overwhelming, the hearsay did not affect |7the jury’s verdict. State v. Hester, 99-426, p. 17 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 107, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342. Nevertheless, it is important that the trial court carefully and strictly apply the narrow explanation exception to the hearsay rule in order to preserve the efficacy of the evidence and the sanctity of the jury’s verdict.