PER CURIAM.
11 This writ presents the issue of whether the trial court erred in denying the State’s motion to introduce Prieur[1] evidence demonstrating a pattern of domestic violence and abuse by defendant, Vernon Wayne Altenberger. For the following reasons, we grant the State’s writ, reversing and vacating the trial court’s denial of the State’s motions, and remand this matter for a full Prieur hearing consistent with the views expressed herein.
FACTS AND PROCEDURAL HISTORY
In the underlying proceeding, defendant is charged with domestic abuse battery-strangulation, a violation of La.Rev.Stat. § 14:35.3(B)(3), resulting from an incident that occurred on March 28, 2010. On that date, defendant was allegedly under stress because his mother was dying and was irritated with the victim, his wife Deanna Altenberger, when he allegedly approached her, picked her up by the neck, choked her, and then threw her on top of a bar. The victim allegedly kicked the defendant into loosening his grip and fell to the floor. When she then tried to grab a broom handle, defendant | ^allegedly punched her in the left eye. As the victim ran towards the front door to make her escape, defendant allegedly slammed the door on her hand. It is further alleged, once the victim managed to get past defendant, she ran to a neighbor’s house and asked the neighbor to phone the police. The victim was not previously able to dial 911 because defendant allegedly took the telephones. -In the meantime, defendant allegedly absconded with the couple’s child, who was three years of age, and allegedly secreted the child for several days. The allegations further contend the victim finally caught up with defendant at a church service, wherein both the pastor and members of the congregation encouraged defendant to voluntarily return the child to her mother. Subsequently, a warrant was issued for defendant’s arrest, but it was not executed until June 4, 2012.[2]
On August 7, 2012, the State filed its Notice of Intent to Introduce Evidence of Other Crimes, Wrongs or Acts. Specifically, the State sought to introduce evidence that:
On or about July 4, 2011, defendant telephoned the victim, Deanna Altenber-ger, leaving her over 300 text messages. Additionally, defendant telephoned vic *512 tim’s place of employment, posted derogatory comments on “Facebook” with the intent to embarrass and harass the victim.
The State explained its intent to introduce this evidence “for all purposes proper under the law, including but not limited to: motive, knowledge, preparation, plan, intent, opportunity, identity and absence o[f] mistake or accident, in accordance with La.Code of Evidence art. 404(B).”
Relevant herein, this evidence involves conduct defendant engaged in between the strangulation offense and the date of his arrest, which violated a | ..¡Protective Order issued against him in favor of the victim. Specifically, the State explains defendant was charged with violating the no contact order by telephoning his victim. Though defendant claimed the call was placed by mistake, defendant proceeded to contact the victim again by telephone through a third party. Moreover, the facts of abuse/harassment stated within the Protective Order alleged defendant sent the victim over 300 text messages, attempted to interfere with the victim’s employment at the federal prison by constant uninvited telephone calls, and made allegations to her supervisors that the victim was engaging in sexual misconduct with inmates. Defendant also posted these allegations and stated he would cause harm to the victim on Facebook. In conjunction therewith, defendant was arrested twice, on or about and between June 4, 2011, and July 2, 2011, for the offense of Harassing Telephone Language.[3]
Without an evidentiary hearing, the trial court denied the State’s motion, noting the alleged strangulation occurred on March 28, 2010, and the phone calls, texts, posts, and the Protective Order all occurred over one year later. In its written reasons, the trial court explained:
The state’s motion includes language that indicates that the very intention of filing the Prieur Motion was to meet the requirements of 404(B)(1) and State v. Prieur, 277 So.2d 126 (1973).... The State has not addressed how the subsequent acts of the defendant which occurred over on[e] year after the alleged crime demonstrate intent, motive, knowledge, plan or absence of mistake or accident. According to Louisiana jurisprudence, remoteness in time is a factor to be considered when determining whether the probative value of evidence outweighs its prejudicial effect. The time between the evidence and the offense charged is also important in determining relevancy. Because the items occurred over one year after the incident the court does not find that such evidence is relevant to the present charged crime. Considering all factors including remoteness |4in time and relevance, its probative value does not substantially outweigh the danger of unfair and undue prejudice as the Code of Evidence requires.
Then on July 3, 2013, the State filed its Second Motion to Introduce Evidence of Other Crimes, Wrongs or Acts. Specifically, the State sought to introduce:
A.
A Petition for Protective Orders ... filed on or about November 1988, *513 against defendant ..., in which it is alleged defendant “kicked in Aunt’s door” and proceeded to physically assault the plaintiff, Cassie Purvis Alten-berger, as well as threaten to “kill her.”
B.
A Petition and Order for Temporary Protective Orders and Rule to Show Cause ... filed in 1992, against defendant ..., in which it is alleged by petitioner that both parties’ minor child was in danger of abuse.
C.
A Contradictory Rule for Custody and/or Grandparents’ Visitation Privileges ... filed against defendant ..., in which it is alleged by petitioners (Vernon Edward Altenberger and Colleen Kimmel Altenberger) that the minor child of defendant was the victim of mental and physical abuse.
The State again explained it intended to introduce “this evidence for all purposes proper under the law, specifically including but not limited to: motive, knowledge, plan, intent and absence of mistake or accident, all in accordance with Rule 404B(1) of the Louisiana Code of Evidence.”
Relevant herein, this evidence consists of two petitions for protective orders and a contradictory rule for custody. Both protective orders were filed by defendant’s prior spouse, Cassie Purvis Altenberger. The first was filed on or about November 21, 1988, alleging defendant kicked in the door of the residence of Cassie’s aunt and began pushing and swinging at Cassie, while she was holding their baby. Defendant then allegedly grabbed the infant around the waist and started jerking her. Next, defendant pushed Cassie against a refrigerator and stove. At the time of this occurrence, Cassie was pregnant. Defendant also threatened to 1 skill her if she did not hand him the baby. The Protective Order was granted in Cassie’s favor by court order dated November 22,1988.
The second was filed on January 24, 1992, on Cassie’s own behalf and on behalf of her minor daughter, H.L.A. In the petition, Cassie alleged abuse by defendant and sought sole custody of H.L.A. or, alternatively, joint custody with defendant’s parents, Vernon and Colleen Altenberger. The order was granted on February 10, 1992, in favor of Cassie, who was granted weekend visitation, but not custody; the paternal grandparents were also granted limited visitation.
Thereafter, on May 1, 1992, defendant’s parents filed their Contradictory Rule for Custody and/or Grandparents’ Visitation Privileges. According to paragraph six of the petition, the grandparents had physical custody of H.L.A. from the time she was ten days old until she was in excess of three years of age. The defendant then took the minor child and moved to Louisiana, on or about April 20, 1991. The grandparents then relocated to Louisiana in order to be closer to the child and continued to see the child on a regular basis until they discovered the child had bruises and cigarette burns to her body. At this time, defendant ceased to allow visitation by the grandparents, keeping the child from them. The petition further alleged the child had been subjected to physical and mental abuse in her parents’ custody.[4]
On July 12, 2018, the State filed its Motion to Reconsider Prieur Evidence, in order to give the State the opportunity to have an evidentiary hearing on both mo *514 tions. Ruling from the bench, the trial court denied the State’s second motion, reasoning:
.... the remoteness is way too far. Yes, I’m clearly aware of the cycle of violence and is it shocking that everybody is back here, no, but I do | finot see where — that remoteness is too far, you’re going to have to show what occurred with [the victim] and with him on [March 28, 2010]. Using the prior stuff is not going to come in.
As to the previous motion, the trial court indicated, if either party opened the door, it would allow all the Facebook postings of both parties, but strongly discouraged the parties from taking such action.[5] Moreover, any texts regarding the incident at issue would be admissible; however, the trial court admitted it had not reviewed the 300 plus messages. In essence, it appears the trial court intends to carefully address the evidence in context of the actual trial and will allow admission for narrative and credibility purposes and in response to defenses raised by defendant:
.... I will allow some but I’m giving you the warning up front to say, we cannot confuse the jury. There is a separate time for violation of protective order. We’re not yet at that trial and so those things that are connected to violation of the protective order are a whole — but there’s a whole story to be told about the March 28th and why it took so long for it to come and what those events are and I am ... certain your client is going to end up — I mean, the victim is going to tell that story and those events are allowed to come in because it is — no doubt ... what happened and when and what occurred what and why it took so long to come to trial.
[[Image here]]
.... we’re going to have to walk across that ... very slowly and at trial and it may be piecemealed, to let her know that, it’s according what gets said and how it’s connected.
[[Image here]]
Let me see what they’re going to do. We can what if this thing to death for hours but I would rather wait to let’s see what y’all are really going to — how it’s going to roll out....
17Basically, what the trial court was “saying ... is that pretrial, nothing automatically gets in. When we get to the trial, of course, if those doors are open and there’s a legal — a legal avenue for them to get in then, of course, they would be admissible.” [6]
The State sought review of these ruling from the Court of Appeal, Third Circuit, which denied the State’s writ, finding no error. State v. Altenberger, 13-906 (La.App. 3 Cir. 10/10/13) (unpublished writ). Therefore, it falls to this Court to provide needed guidance to the lower court on the proper admission of Prieur evidence.
DISCUSSION
Most recently in State v. Garcia, 09-1578 (La.11/16/12), 108 So.3d 1, we addressed in detail the proper use and ad *515 missibility of other crimes evidence, explaining:
The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is, and has been, such evidence is not admissible to prove the accused committed the charged crime because he has committed other such crimes in the past or to show the probability he committed the crime in question because he is a man of criminal character. State v. Lee, 05-2098, p. 44 (La.1/16/08), 976 So.2d 109, 139; State v. Patza, 3 La.Ann. 512 (1848).
Nevertheless, although evidence of other crimes, wrongs, or acts may not be admitted to prove the accused is a person of criminal character, evidence of other crimes has long been admissible if the state establishes an independent and relevant reason for its admission. See State v. Anderson, 45 La.Ann. 651, 654, 12 So. 737, 738 (1893). This very principle is embodied in our Code of Evidence at Article 404(B)(1), which provides, in pertinent part:
Except as provided in Article 412 [regarding a victim’s past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided |8that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La.Code Evid. art. 404(B)(1). While still prohibiting the state from introducing evidence of other crimes, wrongs, or acts to show a probability the accused committed the charged crime because he is a “bad” person, the rule articulated in Article 404(B)(1) allows admission for other purposes, ie., to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La.Code Evid. art. 404(B)(1); Lee, 05-2098 at p. 44, 976 So.2d at 139; State v. Kennedy, 00-1554, p. 5 (La.4/3/01), 803 So.2d 916, 920.
Garcia, 09-1578 at pp. 53-54, 108 So.3d at 38.
Logically, this evidence must have substantial relevance independent from showing defendant’s general criminal character in that it tends to prove a material fact genuinely at issue. State v. Lee, 05-2098, p. 44 (La.1/16/08), 976 So.2d 109, 139; State v. Moore, 440 So.2d 134, 137 (La.1983). The trial court in its gatekeep-ing function determines the independent relevancy of such evidence and balances its probative value against its prejudicial effect. La.Code Evid. art. 403; Huddleston v. United States, 485 U.S. 681, 690-91, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). “In this analysis, the court seeks to answer the question: Is this evidence so related to the crime on trial or a material issue or defense therein that, if admitted, its relevancy will outweigh the prejudicial effect, which the defendant will necessarily be burdened with?” Garcia, 09-1578 at p. 55, 108 So.3d at 39. Its answer to this question and corresponding ruling on the admissibility of the additional other crimes evidence will not be disturbed absent an abuse of discretion, State v. Scales, 93- *516 2003, pp. 4-5 (La.5/22/95), 655 So.2d 1326, 1330-31, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996).
| aAs evident from its written and oral reasons, the trial court herein denied the State’s motions based on the remoteness of the various offenses to the charged offense. However, we have previously stated:
The fact that the other acts or crimes happened some time before the offense for which the defendant is on trial is not sufficient, in and of itself, to require the exclusion of the evidence. Remoteness in time, in most cases, is only one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Generally, a lapse in time will go to the weight of the evidence, rather than to its admissibility.
[[Image here]]
... the time between the other crimes evidence and the offense charged is but one factor to be considered when balancing probative value, prejudicial effect, and relevancy. Length of time between the offenses should not exclude otherwise admissible evidence unless the lapse strips the testimony of probative value. While there must be some con-nexity between the crime charged and the other acts or crimes, the mere passage of time will not necessarily defeat admissibility.
State v. Jackson, 625 So.2d 146, 149-51 (La.1993). Accordingly, while we acknowledge the trial court’s broad discretion in this regard, we find it abused its discretion by limiting its evaluation strictly to remoteness.
As Garcia noted, our jurisprudence has long held evidence of other crimes is admissible if the State establishes an independent and relevant reason for its admission. The State herein argues (1) the evidence of defendant’s prior incidents has independent relevance to establish knowledge, identity, and absence of mistake or accident in connection with the present case; (2) the credibility of the victim and the defendant is a genuine issue to be contested at trial; and (3) the evidence rebuts and/or negates the defendant’s contention the incident never occurred or alternatively, he was acting in self-defense.
In this regard, we note, in the November 1988 incident, defendant allegedly battered his pregnant wife and then attempted to take their child physically from her, threatening to kill her if she did not relinquish the child. According to the | inState, these allegations mirror the March 2010 incident in which defendant allegedly battered his wife and took their child from her. It argues these similarities, in turn, make the likelihood the March 2010 incident happened accidentally or never happened so remote as to rebut any such defenses as well as to negate any contention by the accused that he acted in self-defense. Furthermore, coupling the two incidents with the 1992 incident, the State posits there are three distinct allegations of domestic violence — two with prior wives and one with a child — all three resulting in the defendant taking or attempting to take his child from his victims, which further refute the defenses available to the defendant. Thus, the State’s intent to introduce these prior offenses to established defendant’s pattern of domestic abuse goes directly to rebut defenses defendant may raise at trial and demonstrates their independent relevancy besides merely painting defendant as a bad person. It follows, therefore, the trial court should have considered the independent relevancy of this evidence, rather than outright excluding same based merely on remoteness.
*517 Regarding the various messages and posts, the State argues defendant’s statements carry the narrative momentum of his actions in the context of domestic violence. According to the State, the effects of defendant’s coercive behavior as shown by his statements are part of one continuous transaction of domestic violence and should be viewed as a single and continuing entity, including, but not limited to, defendant’s attempting to manipulate the victim’s behavior by suggesting his own suicide and how that would affect the victim’s daughter as well as threatening to cut off her phone. While these statements were apparently regarded as part and parcel of an ongoing divorce dispute by the trial court, we note the trial in the instant case involves domestic violence, psychological abuse, and coercive behavior, as allegedly exhibited by defendant on three separate |n occasions, which is an integral part of the continuing nature and pattern of domestic violence. See Hernandez v. Ashcroft, 345 F.3d 824, 836-37 (9th Cir.2003)(discussing “cycle of violence” within abusive intimate relationships).[7]
Moreover, contrary to the trial court’s reasoning, the mere fact this criminal conduct occurred after the underlying offense does not preclude its admission or detract from its relevance in regards to the numerated exceptions of La.Code Evid. art. 404(B). Our most recent decision illustrating this principle is State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, in which the State sought the death penalty for Charlotte Pace’s murder that occurred on May 31, 2002, and relied heavily upon the attack on Diane Alexander that occurred on July 9, 2002, Pamela Kinamore’s murder that occurred sometime between July 12-16, 2002, Trineisha Colomb’s murder that occurred around November 21, 2002, and Carrie Yoder’s murder that occurred sometime between March 3-13, 2003, to prove its case in the guilt phase of that capital murder trial. Therefore, the evidence of defendant’s subsequent criminal conduct should likewise have been evaluated in light of the State’s purpose for its admission and not excluded merely because of its temporal remoteness to the underlying offense.
Accordingly, we vacate the trial court’s denial of the State’s motions to introduce other crimes evidence. Under the guidance set forth herein, we remand this matter for an evidentiary hearing in accordance with State v. Prieur. We note the hearing need not be a “trial” on the offenses. See e.g., Garcia, 09-1578, pp. 18-22, 108 So.3d at 15-18; see also State v. Shirley, 08-2106 (La.5/5/09), 10 So.3d 224, 228 (the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility 118of evidence); La.Code Evid. art. 104(A)(“[p]reliminary questions concerning ... the admissibility of evidence shall be determined by the court ... In making its determination it is not bound by the rules of evidence except those with respect to privilege.”). Rather, the State needs merely to present its other crimes evidence and its purpose in seeking its admission. See e.g., Garcia, 09-1578, pp. 18-22, 108 So.3d at 15-18. We then task the trial court in determining whether the State’s purpose in seeking the admission of the other crimes evidence has substantial relevance independent from showing defendant’s general criminal character which outweighs the prejudicial effect, if any, with which defendant will be burdened.
*518 REVERSED and VACATED; REMANDED TO THE DISTRICT COURT.
VICTORY, J., concurs in the result.
WEIMER, J., concurs in part and dissents in part.
HUGHES, J., concurs in part and dissents in part.

. State v. Prieur, 277 So.2d 126 (1973).

. On March 31, 2010, the victim made a request to officers at the City of Ball Police Department to drop the charges against defendant. Apparently, the victim made this request because: (1) a protective order hearing was scheduled to commence on April 16, 2010; (2) defendant was seeking professional help; and (3) defendant's mother passed away and he needed to attend the funeral. Because of this request, the Ball Police Department made the decision not to execute the warrant. However, approximately one year later, the Rapides Parish District Attorney’s Office sent a letter of inquiry to the Ball Police Department as to why their office had not forwarded any case files for prosecution regarding defendant.

. Along with the domestic abuse-strangulation charge, defendant is charged with one count of Violation of a Protection Order, in Criminal Docket Number 311,059, alleged to have occurred on July 6, 2011, and one count of Harassing Telephone Language, in Criminal Docket Number 308,210, alleged to have occurred between June 4, 2011, and July 2, 2011. The State has reported to this Court that, on December 5, 2013, defendant was convicted of the offense Harassing Telephone Language and sentenced to serve six months in the Rapides Parish Jail.

. Note, this record is currently under seal and will require an order of the court for an in camera inspection.

. During the hearing, the trial court explained:
I’m going to say it again for the world of Facebook because no one’s hands are clean in this courtroom. That y’all have taken it to a level that — that’s been amazing and so that’s why it’s going to be in front of a jury and ... so if hands want to keep getting dirty, all — everything is going to be exposed, which is not pleasant for anybody, and it’s not a wise decision for anyone.

. The trial court’s evidentiary ruling on the admissibility of defendant's alleged criminal conduct that occurred after the charged offense is tenuous at this time.

. We note the hearing transcript does evidence an understanding of the domestic violence cycle on the part of the trial court and a willingness to allow the victim to narrate her story regarding the actions and inactions taken in bringing this matter to trial.