[D]espite some clear dissimilarities in the details of the homicide and violence inflicted upon [the victim] and the homicide and violence involving the defendant's prior wife, the crimes "clearly express the vicious, deviant attitude that [defendant] holds toward women with whom he has a romantic relationship. This attitude is so similarly reflected in each of the crimes that [defendant] has committed that crimes are inextricably connected in the pattern ... they exhibit." [State v.] Rose, 05-0396 at p. 4 [ (La.App. 4 Cir. 1/18/06), 925 So.2d [34] at 49 (Cannizarro, J., dissenting).
The district court also observed the Second Circuit's reliance on Rose in Howard, 47,495 at 9-10, 106 So.3d at 1044, which allowed 404(B) evidence because it showed defendant's "deviant attitude toward women he was dating" and "[i]t also negated any claim that [defendant] intended only to frighten, not injure, [the victim]."
As an initial matter, we note that an individual's "deviant attitude" toward any *1156 particular group of people is not, in itself, an exception to the general rule disallowing 404(B) evidence. In Rose , the Supreme Court highlighted the defendant's "deviant attitude" in the context of an inextricable connection between all the acts in question, thereby rendering it relevant to the identity exception to La.C.E. 404(B) :
[T]he crimes revealed sufficient similarities arising from a fixed and aberrant pattern of behavior that tended to identify defendant as the perpetrator in the death of his second wife[, Ms. Rose]. The other crimes evidence was extremely probative, especially considering the circumstantial nature of the case against defendant. The prior crimes evidence tended to corroborate the remaining evidence introduced at trial. For example, the jurors heard from Mr. James that Ms. Rose and defendant were arguing on the morning of her death over a traffic ticket. They also heard from Mr. Wilson that he and defendant had engaged in a heated telephone conversation on the morning of her death in which defendant accused Mr. Wilson of having an affair with
Ms. Rose. The other crimes evidence showed defendant had previously grabbed and struck Ms. Rose during another argument when defendant accused her of not looking at him when he spoke to her. The other crimes evidence also showed defendant acted violently toward another woman with whom he had a close personal relationship [his previous wife], and eventually killed her during an argument. Thus, rational jurors could have found the similarities sufficiently probative to identify defendant as Ms. Rose's murderer because a specific pattern of violent and obsessive behavior earmarked the crimes as the work of one man and thereby "sustain[ed] the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict." Old Chief [v. United States ], 519 U.S. [172,] 187, 117 S.Ct. [644,] 653, 136 L.Ed.2d 574 [ (1997) ].
Rose , 2006-0402 at 16-17, 949 So.2d at 1246.
The unique factual circumstances of Rose are not entirely comparable to the facts alleged here. Rose drew on the similarities between acts of violence against defendant's two wives, both of whom he killed. The Supreme Court highlighted the facts that both women were married to defendant when he killed them, and that both women experienced "stormy" marriages that involved times of separation. Defendant was physically violent with both women. The Court described both murders as "brutal" and as having taken place in defendant's home. After each homicide, defendant contacted his mother and fled the state. Lastly, defendant turned himself in on each incident. Id. , 2006-0402 at 16, 949 So.2d at 1245. Unlike Rose , the State's proffered 404(B) evidence involves conduct targeted at multiple different women over a span of eighteen years.
The Rose Court highlighted these facts as they related to identity. That is, evidence of defendant's acts against another woman was more probative than prejudicial and admissible because the similarities between the two homicides shed light on a material issue genuinely in dispute-defendant's identity as the perpetrator. However, the identity exception is one the State has not placed at issue here.
However, Rose did address motive as well, noting that "[f]or evidence of motive to be independently relevant, it must be factually peculiar to the victim and the charged crime." Id. , 2006-0402 at 15, 949 So.2d at 1244. The court went on to hold:
[W]e find the evidence that defendant physically abused Ms. Rose is independently relevant to show the volatile nature of the relationship between defendant *1157 and Ms. Rose. This evidence tends to show defendant's motive for commission of Ms. Rose's murder. The State was attempting to prove that defendant was the perpetrator of Ms. Rose's violent death. The State's case was largely dependent on circumstantial evidence, so any evidence tending to prove that defendant had a motive or reason for committing the murder was extremely probative. See [State v. ] Lafleur, 398 So.2d [1074,] 1081. Defendant's documented physical abuse of Ms. Rose illustrates a motive factually peculiar to her murder.
Rose , 2006-0402 at 15, 949 So.2d at 1245. Each of the cases cited by Rose in this regard involved prior bad acts against the same victim as that for the offense for which defendants were ultimately charged, not other individuals. See State v. Lafleur , 398 So.2d 1074, 1080 (La. 1981) (stating the State "served defendant with notice of its intention to introduce evidence of prior acts of violence by defendant as well as certain statements and threats made toward the deceased child."); State v. Walker , 394 So.2d 1181, 1184-85 (La. 1981) (stating "[t]he testimony of Ms. Normand, the victim of the alleged beatings administered by defendant, constitutes clear and convincing evidence that defendant committed the criminal acts. The evidence is substantially relevant for the purpose of showing defendant's motive for committing the crime charged, that is, because of the troubled marriage of the parties and its subsequent dissolution, defendant harbored ill will towards Ms. Normand which, upon defendant seeing his ex-wife celebrating her engagement to another man, led to his commission of the crime charged. Also, the evidence tends to prove a material fact at issue, the nature of the prior relationship between the parties in regard to defendant's motive for committing the crime."); State v. Welch , 615 So.2d 300, 303 (La. 1993) (stating "[i]n this case, the state could not place the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and the defendant. Without that evidence, which included prior acts of violence or threatened violence by both parties ... the jury would have lacked the context in which to evaluate the victim's testimony about what otherwise appeared to be a gratuitous attack by the defendant. To that extent, the threat against the victim's fiancé, Sims, was also relevant, not because it said anything about the defendant's intent to harm the victim directly, but because it showed how he clung to the relationship, even after it was long over, and how far he was willing to go to enforce that preoccupation on the victim by isolating her from the companionship of other men.") Thus, prior acts may indeed be relevant to the issue of motive when the victim in the prior act is the same as that in the charged offense. However, to take one example, Relator's conduct toward N.J. on October 15, 2009, is in no way relevant to his motive in committing the charged offense on August 10, 2016, against R.F. Indeed, only the incidents involving R.F. as a victim occurring on May 22, 2013, and August 10, 2016, would satisfy the requirements of this exception.
While we find the district court erred in finding all of the acts relevant to the issues of motive and intent, we deny relief. Louisiana Code of Evidence art. 404(B) requires that the State "provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes[.]" Another recognized exception to the general rule prohibiting 404(B) evidence is pattern. The State did submit the pattern exception, in that "Defendant has committed multiple incidents in the past of being directly involved or happening upon a scene during incidents [of] both verbal and physical arguments with women who he is *1158 either in a sexual relationship in or has been in a sexual relationship with." The Louisiana Supreme Court recognized the admissibility of such pattern evidence in State v. Altenberger , 2013-2518, p. 10 (La. 4/11/14), 139 So.3d 510, 516, in which the Court approved the use of acts against other women because "the State's intent to introduce these prior offenses to established [sic] defendant's pattern of domestic abuse goes directly to rebut defenses defendant may raise at trial and demonstrates their independent relevancy besides merely painting defendant as a bad person."
Lastly, we address the State's contention that Relator may not dictate its proof at trial by "stipulating" to intent. However, Relator has not stipulated to intent; Relator has argued that intent will not be an issue at trial because he plans to deny the conduct occurred. The State's notices pursuant to La.C.E. art. 404(B) both specifically describe Relator's actions of taking a gun and shooting "at" the victims. Our jurisprudence provides:
To establish the general criminal intent for an aggravated assault, jurisprudence holds that the act of pointing a weapon at another person and threatening bodily harm is sufficient to establish the element of intent. See State v. Hill , 47,568, p. 11 (La. App. 2 Cir. 9/26/12), 106 So.3d 617, 624 (finding that aiming a pistol at a victim from point blank range and verbal threatening harm satisfies the level of proof required to sustain a conviction for aggravated assault); State v. Connors , 432 So.2d 308 (La. App. 5th Cir. 1983) (finding that an aggravated assault occurred when defendant intentionally raised the gun as if to aim at victim and thereby placed the victim in reasonable apprehension of receiving a battery).
State v. Brown , 2017-0124, pp. 6-7 (La. App. 4 Cir. 12/12/17), 234 So.3d 978, 982-83. Illegal use of a weapon is also a general intent crime. State v. Etienne , 94-910, p. 5 (La.App. 3 Cir. 2/1/95), 649 So.2d 1230, 1233. Here, the alleged conduct of Relator of taking a gun and shooting it at the victims is sufficient to meet its burden in this regard. Prieur stated that before the State may introduce such evidence, it must show "that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered." Prieur , 277 So.2d at 130. While the State indeed bears the burden of proof, such obligation does not permit otherwise inadmissible evidence from being presented to the jury if it is simply cumulative.
We find that the State placed Relator on sufficient notice regarding its intent to use the prior bad acts to show Relator's pattern of abusive behavior towards women with whom he has had an intimate relationship.
Accordingly, Relator's writ is granted, but relief is denied. The acts in question are relevant and admissible to the issues of motive, as detailed above, and pattern. The Court's limiting instructions should be specific as to the legitimate purposes for which the jury may consider this evidence.[2]

Should intent indeed become an issue at trial, the court's instructions may include language indicating the jury may consider the acts for that purpose as well.