STATE OF LOUISIANA       \*       NO. 2019-KA-0316

VERSUS       \*       COURT OF APPEAL

EVELYN CLANTON       \*       FOURTH CIRCUIT

      \*       STATE OF LOUISIANA

      \*

      \*

\* \* \* \* \* \* \*

**BARTHOLOMEW-WOODS, J., DISSENTS WITH REASONS**

I respectfully dissent. Defendant challenges the trial court's ruling allowing the State's La.C.E. 404(B) evidence on two grounds. First, on the grounds that the evidence was admitted simply to show the jury her bad character, and second, that it was admitted in violation of her right to confront witnesses against her.

Louisiana Code of Evidence art. 404(B) provides, in relevant part:

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

In other words, at the start of every criminal case, there is an assumption that evidence of other acts of the defendant will not be presented to the jury, unless the State is able to show that an exception to the rule exists and can satisfy other baseline requirements. Even then, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La. C.E. art. 403.

1

The leading case relative to evidence of other crimes, wrongs, or acts is *Prieur, supra,* in which the Louisiana Supreme Court held that when the State seeks to admit such evidence, it shall provide written notice of such intent to the Defendant and "specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence." *Prieur*, 277 So.2d at 130. Furthermore, the State must show that the evidence is "not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered." *Id.* Additionally, in the event the State meets its burden and introduces such evidence, the jury should be properly instructed "as to the limited purpose for which the evidence is received and is to be considered" and "that the defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto."[1] *Id.*

The Supreme Court revisited *Prieur* in its opinion *State v. Taylor*, 2016-1124, p. 12 (La. 12/1/16), 217 So.3d 283, 292,[2] stating:

> [T]he state cannot simply rely on a boilerplate recitation of the grounds for admissibility stated in La. C.E. art. 404(B). It is the duty of the district court in its gatekeeping function to determine the independent relevancy of this evidence . . . The district court must also balance the probative value of the other crimes, wrongs or acts evidence against its prejudicial effects before the evidence can be admitted.

Given this general jurisprudential context, I now turn to the issues presented by the State's motion and presentation of 404(B) evidence to the jury at trial and add additional context.

---

[1] While *Prieur* mandated the jury be so instructed in the court's final instructions, the jury need only be so instructed at the time the evidence is received if the defendant makes a request.

[2] *Taylor* is perhaps most notable for holding "that when seeking to introduce evidence pursuant to La. C.E. art. 404(B), the state need only make a showing of *sufficient* evidence to support a finding that the defendant committed the other crime, wrong, or act." *Taylor*, 2016-1124, p. 10 (La. 12/1/16), 217 So.3d 283, 291.

*Pre-Trial Stage*

The State's *Prieur* motion initially specified the exceptions of "motive, intent, preparation, plan, knowledge, and absence of mistake or accident." It then quoted a Louisiana Supreme Court case that discussed the appropriate use of modus operandi evidence. Later in the motion, the State also referenced opportunity and identity, suggesting that each and every exception would be an issue genuinely contested at trial. The State argued the evidence would demonstrate the Defendant's "unique signature" of using improvised weapons to attack male victims' heads in an apparent reference to modus operandi. When the State turned its attention to the substance of the exceptions and their applicability, however, it only discussed motive, preparation, plan, intent, and lack of mistake or accident.

"Motive has been defined as a reason the accused has for committing the charged offense. Motive is the cause or reason that moves the will and induces action for definite result." *State v. Brown*, 398 So.2d 1381, 1384 (La.1981). Here, according to the State, Defendant's motive or "reason" for her actions was "pure unadulterated rage [at] even the slightest perceived offense." In other words, Defendant's prior acts show she is an angry and impulsive person, and she acted in conformity with that disposition in the instant case. Not only is presentation of such character evidence explicitly forbidden under our law, but, by all accounts, the facts indicate that the Defendant was the last of five people to engage in a fight involving her sister and mother – hardly a "slight" or "perceived" incident.

The State next addressed preparation and plan. Here, the State argued the Defendant's "signature" preparation in all of her prior acts is "that there is none. The Defendant is like a bull seeing red, striking suddenly and without provocation." As to plan, the State submitted Defendant simply "grab[s] the nearest piece of metal available, and swing[s] for the head of whatever poor man

was unfortunate enough to have crossed [her] path." The State's explanation turns the exception on its head, suggesting that the Defendant's *lack* of preparation and *lack* of plan in each prior act and the charged offense constituted proof of a preparation or plan in the instant matter. Further, this explanation once again impermissibly highlights the State's theory of Defendant as a person of angry and impulsive character who acted in conformity therewith as to Mr. and Ms. Garner.

Lastly, the State relied on the number of prior offenses – "fully 5 prior incidents" – to argue that the Defendant had "no legitimate claim to lack of intent or accident."[3] While "[o]ne of the purposes for which such evidence may be relevant is to show by similar offenses that the act for which the defendant is on trial was not inadvertent, accidental, unintentional, or without guilty knowledge . . . for such evidence to be admissible to prove intent, there must be a real and genuine contested issue of intent at trial." *State v. Harris*, 383 So.2d 1, 8 (La.1980). Here, Defendant indicated numerous times that intent would not be in dispute at trial. That is, Defendant would not argue that she did strike the victims, but did so accidentally or by mistake. Instead, she indicated she would either argue that she did not strike the victims at all, or did so in self-defense. I recognize that even if "the defendant argues intent is not a genuinely contested issue, his actual defense will be unknown until trial[,]" *Taylor*, 2016-1124, p. 17 (La. 12/1/16), 217 So.3d at 295, but the State is entitled to rebuttal. La.C.Cr.P. art. 765(5). Rebuttal is the "[i]n-court contradiction of an adverse party's evidence." Rebuttal, Black's Law Dictionary (11th ed. 2019). Had the defense indeed presented evidence placing

---

[3] As discussed below in the "Trial Stage" section, the State presented only three of the five acts to the jury – those which resulted in convictions – undermining its own argument in this regard. In ruling on the motion, the trial court presumably relied on the existence of all five acts – and the State's intention to introduce all five acts – in determining their admissibility for the purposes of the intent and lack of mistake/accident exceptions. That is, the persuasive force presented by the totality of the facts of the prior acts would lead any rational juror to conclude Defendant acted intentionally in striking the victims. Such persuasive force was necessarily diminished by the State's failure to present all of the acts to the jury as it implied it would.

4

intent/lack of mistake genuinely at issue, the State then could have addressed those issues in rebuttal.[4] Instead, the State began its case in chief by introducing prior acts evidence through several witnesses, in what could be described as a "preemptive rebuttal" of a defense that had not yet been made, and one the Defendant explicitly denied she would assert.

I turn next to the hearing on the motion. "[T]his court has continued to indicate that the state cannot introduce evidence of other crimes without first conducting a pre-trial hearing at which it must prove defendant committed the other crimes and that they are admissible." *Taylor*, 2016-1124, p. 11, 217 So.3d at 292. At the hearing, the State initially submitted on the papers, which included its motion, as detailed above, and attached police reports. After the defense's remarks, the State added the following:

> [W]e assert that there is a distinct pattern of behavior where defendant engages in verbal altercations, immediately escalates to a physical altercation, grabs the nearest metal object she can and cracks the victim over the head. That is the distinct pattern here.

Pattern is most often relevant in a modus operandi (hereinafter "MO") analysis. MO is "[a] method of operating or a manner of procedure; esp[ecially] a pattern of criminal behavior so distinctive that investigators attribute it to the work of the same person." Modus Operandi, Black's Law Dictionary (11th ed. 2019). "The greater the degree of similarity of the offenses the more the evidence enhances the probability that the same person was the perpetrator, and hence the greater the probative value of the evidence[.]" *State v. Cox*, 2015-0124 (La.App. 4 Cir. 7/15/15), 174 So.3d 131, 138. The State's written motion made only nominal

---

[4] The State charged Defendant with a specific intent crime, but the jury returned a verdict of a general intent crime. "Aggravated battery is a crime of general intent, meaning that the State need only prove the offender must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." *State v. Wix*, 2002-1493, p. 9 (La.App. 4 Cir. 1/15/03), 838 So.2d 41, 47. In other words, "the criminal intent necessary to sustain a conviction is shown by the very doing of the criminal act." *State v. Smith*, 39,698, p. 9 (La.App. 2 Cir. 6/29/05), 907 So.2d 192, 197. The prior offenses introduced at Defendant's trial were general intent crimes, and the State never articulated how Defendant's prior general intent crimes were relevant to the specific intent element of the charged offense.

reference to MO and identity, and the trial court did not approve "MO" or "identity" in its ruling as a permissible basis for admitting the evidence, as discussed below. What is more, as mentioned above, the court did not instruct the jury as to identity.[5]

In *State v. Altenberger*, 2013-2518, p. 8 (La. 4/11/14), 139 So.3d 510, 515, the Louisiana Supreme Court also touched on the role of the trial court in this process:

> The trial court in its gatekeeping function determines the independent relevancy of such evidence and balances its probative value against its prejudicial effect. La.Code Evid. art. 403; *Huddleston v. United States,* 485 U.S. 681, 690–91, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). "In this analysis, the court seeks to answer the question: Is this evidence so related to the crime on trial or a material issue or defense therein that, if admitted, its relevancy will outweigh the prejudicial effect, which the defendant will necessarily be burdened with?" [*State v.*] *Garcia,* 2009–1578, p. 55, 108 So.3d 1, 39].

*Altenberger*, 2013-2518, p. 8, 139 So.3d at 515. At the end of the parties' arguments, the Court ruled as follows:

> And so this court has gone over all of this information and I do believe that the State has met its burden. I do believe that the prior acts or wrongs doings [sic] come in, so at this time, I am going to allow them to be admissible . . . .

Upon the defense's request for clarification, the court stated the other acts were admissible as relevant to motive, intent, preparation, plan, knowledge, and absence of mistake or accident. No further explanation was provided.

The trial court's oral ruling was insufficient given our jurisprudence. It did nothing more than indicate that the court had "gone over" the information submitted by the State, concluding with "I do believe that the prior acts or wrongs

---

[5] The State's brief cites to this Court's opinion in *State v. Lyons,* 2018-0280, 241 So.3d 1153 (La.App. 4 Cir. 3/29/18), which considered pattern evidence. In *Lyons*, this Court specifically relied upon the Louisiana Supreme Court's decision in *State v. Altenberger*, 2013-2518 (La. 4/11/14), 139 So.3d 510. *Altenberger* and *Lyons* both addressed pre-trial rulings on the admissibility of art. 404(B) evidence in the context of domestic violence, and is therefore distinguishable. *Altenberger* and *Lyons* considered pattern in the larger context of the defendants' histories of domestic violence and the potential to use the evidence in rebuttal. The fight between the Garners and the Clantons is not susceptible to analysis in any such larger context; it was a chance encounter between strangers.

doings [sic] come in." The court's ruling did not specify which exceptions applied or for what purposes they could be used by the State, requiring counsel for the defense to seek clarification, at which time the court listed six exceptions without detailing its reasons therefor. The court's ruling also failed to reflect any analysis with respect to weighing the probative value of the evidence against its prejudicial effect. Again, it is notable that the jury's instructions as to the permissible use of this evidence did not match the court's ruling as to permissible uses.

### Trial Stage

Prior to trial, the Defendant filed a motion to bar introduction of inadmissible hearsay evidence. Specifically, Defendant sought to preclude officers who responded to the various incidents described in the State's *Prieur* motion from testifying as to details of those incidents of which they did not have direct knowledge. The Court addressed the motion at a bench conference just prior to trial, during which the State assured the court and defense as follows:

> Judge, the State would assert that we will not attempt to elicit any improper hearsay. We understand the rules of evidence, and we will abide by the Court or any contemporaneous [objection] of law.

The Court advised the defense that "if there is any inadmissible hearsay . . . you have the right to make any objection. The Court will rule on it accordingly." The Court also noted its understanding at that time that the State had not made any motion to have a witness declared unavailable.[6] After opening statements, the State elected to begin its case in chief by presenting art. 404(B) evidence through several witnesses.

The first was Officer Mason Suell, who responded to the September 3, 2015 incident. Almost immediately, the court sustained a hearsay objection, and the State advised the officer not to discuss what witnesses said, and instead focus on

---

[6] If a witness is "unavailable" as defined in La.C.E. art. 804(A)(1)-(5), hearsay testimony may be admissible if the party seeking to introduce such evidence satisfies one of the requirements established in subsection (B)(1)-(7).

what he "learn[ed] throughout the course of [his] investigation of the crime that was alleged[.]" The Officer responded, "I learned [the Defendant] was the perpetrator[,]" drawing another objection, which was overruled. Despite repeated objections of this nature, the officer further testified to the following: "she violated the stay away order"; "[the victim] defended himself against the blows from the perpetrator"; "[t]here were a bunch of keys in her hand"; "[t]he perpetrator used a metal pipe to break the windows on the car. She used a brick, and she – and the keys against him." Eventually, the defense stopped objecting. When responding to one objection, the State responded "I'm not asking him what one person said. I'm asking what he learned during his investigation." The court concluded, "[f]or that reason, overruled." The officer also testified to injuries he personally observed, "injuries to his hand and some bruising to his body, or contusions to his body – lacerations[.]"

Next, New Orleans Police Officer Robert Masters testified that he investigated the June 22, 2009 incident. Once again, almost immediately, the court sustained a hearsay objection, when the witness attempted to testify to what the victim told him. Immediately thereafter, the court sustained multiple similar objections when the State asked the witness questions that clearly called for testimony containing hearsay. The officer even volunteered at one point, "All I had was the victim's statement. That's all I had to go off of." He added, "I was just the initial officer who arrived at the scene and took the victim's statement, and then, prepared a warrant on his statement." The State fed off this answer, asking, "So in preparing that warrant, prior to preparing the warrant, what did you learn through that investigation?" The court overruled the Defendant's initial objection, but the Defendant persisted, even noting for the court that the witness had just testified "that the only source of knowledge that he had was from a statement." The court responded:

8

And again, the question asked was "what did he learn during the course and scope of his employment on this particular case", and I'm going to allow it. Again, it's the same objection that you just made that I'm going to again, overrule.

The officer then testified as follows:

The victim was attacked by his ex-girlfriend who – there was a verbal altercation. During the altercation, he tried to get in his car and flee. She followed him into the car, picked up a brush and was hitting him with a brush in the car. He got out of the car to get away from her. She followed him out of the car, picked up a bottle, broke the bottle, and stabbed him in the chest with it. Then, the police car turned onto the street. Upon seeing the police car, he thought that was the police car coming, because he had called the police before that. She saw the police car and fled the scene. Turns out, the police were not responding to that call. That was just an officer conducting a traffic stop in that area by coincidence.

The officer also testified to injuries he personally observed, "a laceration to his eye and a puncture wound to his chest and a scratch on his arm."[7]

The State next called New Orleans Police Detective Reuben Henry, who investigated the May 20, 2009 incident. He testified that he took photographs of the victim's injuries, to include "three stab wounds to his shoulder, side, and his stomach area." The witness also testified that the Defendant was arrested for the offense.

Lastly, the State called Officer Kevin Bell, who testified that he had taken Defendant's fingerprints on the morning of trial. He was presented with certified conviction packets associated with the three incidents presented to the jury and verified that the prints matched those of Defendant.

Much as evidence of other acts is generally inadmissible, so, too, is hearsay. La.C.E. art. 802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.C.E. art. 801(C). "A 'declarant' is a person who makes a statement." La.C.E. art. 801(B). Similarly to evidence of other acts, there are

---

[7] Notably, this is the only witness of the three who testified as to injuries on the victim's head, and in conformity with the State's argument that the Defendant uses improvised objects to attack male victims' heads.

9

exceptions to the general rule, as well as exclusions. See La.C.E. arts. 801(D), 803, 803.1, 804.[8]

Hearsay is generally not allowed "because the value a jury places on a statement depends upon its declarant, and the defendant cannot challenge the declarant's credibility by cross-examination or other safeguards of reliability if the declarant is not present at trial." *State v. Smith*, 2011-0091, p. 13 (La.App. 4 Cir. 7/11/12), 96 So.3d 678, 687. Furthermore,

> If the statement is offered for a purpose other than to prove that the matter asserted is true, the statement is not hearsay. Thus, "the value of the statement as evidence does not depend on the credibility of the out-of-court asserter and the statement falls outside of the scope of the hearsay exclusionary rule. McCormick, [*Evidence* ], § 249, 6 Wigmore, *Evidence,* §§ 1766, 1788 (Chadbourne rev., 1976); 4 J. Weinstein, *Evidence,* Part. 801(c)[01] (1981)." *Wiltz,* p. 7, 28 So.3d at 559.

*Id.*

The officers' testimonies regarding the details of Defendant's other acts constitute hearsay, because they consist of statements other than one made by the declarant (i.e, the victims of the other acts), while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. The State offered the statements for their truth. Undeniably, if they were not offered for their truth (that is, offered as proof that Defendant did what she did), the jury could not consider the specifics of those acts and use those specifics for the purposes intended by the State as argued in its *Prieur* motion. Indeed, the State repeatedly noted the similarity between the other acts and the charged offenses pre-trial. Thus, the State desired to present the specifics of those other acts to the jury for their truth so that the jury would draw conclusions about the Defendant's conduct as charged.

---

[8] Exceptions to the hearsay rule recognize the hearsay character of a statement, but permit the statement's introduction because the nature of the statement makes it reliable, e.g., "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." La.C.E. art. 803(2). Exclusions are simply "not hearsay" under the law. La.C.E. art. 801(D).

I would also highlight that it is the substance of the witnesses' answers that should guide the trial courts in evaluating hearsay, not the form of the State's question or the form of the answer. Here, the supposedly permissible form of the question as asked by the State guided the court's rulings, so long as the State did not specifically elicit what the victims "told" or "said" to the officers. Despite ruling in favor of the Defendant when such trigger words were used, the court thereafter overruled the Defendant's objections to the State's efforts to elicit the exact same hearsay statements by changing the form of the question. This tactic is not new, and was repudiated in *State v. Wille*, 559 So.2d 1321, 1331 (La.1990) (footnotes omitted):

> Admission of information received by a police officer in the investigation of a crime, on the basis that such information explains the officer's presence and conduct and therefore does not constitute hearsay evidence, is an area of widespread abuse. McCormick on Evidence § 249 (E. Cleary 3d ed. 1984). Such information frequently has an impermissible hearsay aspect as well as a permissible nonhearsay aspect, and the court in determining admissibility should balance the need of the evidence for the proper purpose against the danger of improper use of the evidence by the jury. *Id.* The fact that an officer acted on information received in an out-of-court assertion may be relevant to explain his conduct, but this fact should not become a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. G. Pugh, Louisiana Evidence Law 429–431 (1974).

*See also State v. Green*, 49,741, pp. 20-21 (La.App. 2 Cir. 4/15/15), 164 So.3d 331, 345. This Court acknowledged this concept more recently:

> The explanatory exception has also been summarized as follows:
>
>> In criminal cases, the arresting or investigating officer will often explain [his actions] ... by stating that he did so 'upon information received' and this of course will not be objectionable as hearsay, but if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded as hearsay.
>
> *McCormick on Evidence,* § 248 (2d ed.1972).

11

*State v. Legendre*, 2005-1469 (La.App. 4 Cir. 9/27/06), 942 So.2d 45, 53. Here, the officers' relation of the victims' statements to the jury were not used "merely to explain events leading to the arrest of the defendant." They were used as substantive proof of the facts of Defendant's prior acts, inviting the jury to compare them to the facts of the charged offenses and draw conclusions thereon.

The State suggests an exception applies. Specifically, La.C.E. art. 803(8)(a)(iii):

> (8) Public records and reports. (a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:
>
> . . .
>
> (iii) Factual findings resulting from an investigation made pursuant to authority granted by law. Factual findings are conclusions of fact reached by a governmental agency and may be based upon information furnished to it by persons other than agents and employees of that agency.

Such an interpretation of this exception has been specifically addressed by the Louisiana Supreme Court:

> [I]t is essential for an exception to the hearsay rule that some circumstantial probability of trustworthiness be found, to take the place of cross-examination so far as may be. 5 J. Wigmore, Evidence, s 1632 (1974). An overbroad exception admitting into evidence all statements on file with all public officers would have potential conflict with a defendant's right to confrontation and allow introduction of information derived from untrustworthy sources and through unreliable methods. Compare, Fed.R.Evid. 803(8); C. McCormick, Evidence, s 317 (Cleary ed. 1972).

*State v. Martin*, 356 So.2d 1370, 1375 (La.1978). Allowing defendants to confront their accusers is the very means by which our system allows a factfinder – here, a jury – to evaluate the trustworthiness of the source. *Martin* recognized the conflict between the exception relied upon by the State and the accused's right to confront. By allowing the State's witnesses to testify regarding the Defendant's specific conduct – conduct the witnesses did not personally observe – Defendant could not challenge the trustworthiness of that evidence before the jury.

The State also argues that La.C.E. art. 803(22) is applicable:

> Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of six months, to prove any fact essential to sustain the judgment. This exception does not permit the prosecutor in a criminal prosecution to offer as evidence the judgment of conviction of a person other than the accused, except for the purpose of attacking the credibility of a witness. The pendency of an appeal may be shown but does not affect admissibility.

It cannot be disputed that a record reflecting the existence of a final judgment of conviction is an exception to the hearsay rule. However, the authority to introduce evidence of the existence of a conviction does not give the State free reign to introduce specific details of the conviction through inadmissible hearsay as it did here.

### *Harmless Error*

The improper admission of art. 404(B) evidence is subject to harmless error analysis. *State v. Contreras*, 2017-0735, p. 15 (La.App. 4 Cir. 5/30/18), 247 So.3d 858, 870, *writ denied*, 2018-1172 (La. 12/17/18), 259 So.3d 341. "An error is harmless if the jury's verdict actually rendered at trial was 'surely unattributable to the error.'" Id. (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)). The same analysis applies to the improper admission of hearsay. *Legendre*, 2005-1469, p. 14, 942 So.2d at 54.

Here, it cannot be said that the Defendant's conviction was surely unattributable to the improper admission of art. 404(B) evidence through inadmissible hearsay. The jury heard evidence that Defendant became involved only after Mr. and Ms. Garner and Defendant's sister and mother engaged in a quickly escalating physical altercation. But for the introduction of improper character evidence, elicited in a fashion meant to deprive Defendant of her ability to confront her accusers, the result very well may have been different. The jury was exposed to irrelevant facts virtually guaranteeing Defendant's conviction

13

because of her prior behavior, no matter what argument the defense were to offer in response. The error was further compounded by the State's approach at trial, commencing its case-in-chief with the presentation of 404(B) evidence. Though not determinative, the State's election in this regard was troublesome for its potential to confuse the jury as to the charges it would ultimately consider. La.C.E. art. 403.

Thus, based on the aforementioned, I respectfully dissent.